Judge Underwood
delivered the Opinion of the Court:
The Bank of Kentucky l’ecovered a judgment against McChord, Caldwell and Roberts. McChord w'as the principal, Caldwell and Roberts were his sureties. An execution in favor of the Bank was levied on sundry slaves, as the property of Roberts. They were sold by the sheriff, and purchased by William T. Caldwell, on the 23d of June, 1827, for one thousand one hundred' and six dollars twenty five and a half cents. On the same day, Roberts receipted to Caldwell, the appellant, *356 for three hundred forty two dollars ninety seven cents, “ in part for what he stands indebted to me, in the case of the Bank of Kentucky against John MtChord, Caldwell and myself — my negroes having, this day, been sold-to pay the whole debt.”
The slaves of a ■ deft m an execution, who was a surety for the debt, ■ ere levied on, sold, and purchased by his father in law ; who, dying, devised to his daughter ,forlife, the slaves he had given her possession of ; under * this devise,the defendant received the same slaves-that had been- soldi under the exe- • ration: held that he thereby acquired a new and different title, not a restoration of what had been taken from him by the levy, so as to exonerate a co-surety (who •was bound to contribute)from his liability to reimburse the owner of the slaves, for half the amount they sold for.
Roberts instituted this action of assumpsit against his co-surety, Caldwell, for the purpose of recovering a moiety of the debt paid by the sale of his negroes. He obtained a judgment for two hundred seventy two dollars fourteen and a fourth cents, on the 18th: of May, 1832. Caldwell has appealed.
Caldwell insists that no recovery should bte had against him, because, as he alleges, and as the facts are, Roberts voluntarily surrendered his slaves, and' "was anxious that they should be sold under the execution, and purchased by William T. Caldwell, the father-in-law of both Me-Chord and Roberts, and the father of the appellant, with a view to exempt them from other apprehended liabilities as surety ; and because the slaves, after the death of William T. Caldwell, had been restored to Roberts, by one of the executors, without Roberts paying any part of the debt for which the slaves had been executed and sold, otherwise titan by tiie sale of the slaves.
It seems that William T. Caldwell made his will on the 14th of July, 1827. It was proved and admitted to-record in the August following. B-y a clause in the will, the testator “gives to his daughter Mary Logan Roberts, during her life, all of the negroes and other property he had given her possession of, and a grown negro girl, at his death, out of his estate, and her equal dividend at her mother’s death.” It does not certainly appear, that the slaves which Roberts surrendered for sale under'the execution, were slaves which he obtained by his wife, the testator’s daughter. Such presumption may be indulged, and therefore it may be inferred, that the executor gave up the slaves, purchased under the execution to Roberts, as passing under the above clause of the will, falling within the discription of negroes which the testator had given his daughter Roberts possession of. . Under this view of the transaction, Roberts acquired, at most, under the will, a life estate in the slaves. If he *357 owned the fee simple at the time they were levied on, the nature of his estate has been changed by the sale. He has surrendered a fee simple, for a life estate. This must be regarded as prejudicial to him ; and hence there is no ground for viewing him in the attitude in which the appellant would place him : to wit, as the seeker of contribution from a co-surety, when he had sustained no loss. Roberts made out ample consideration upon which to recover.
If one of several sureties is compelled to pay the deot, or any pai t of it, the co-sureties ar eim.t.ediutely liable to him, for their due proportions, lie is not bound to pursue the principal, before lie has recourse tv them.
A verdict and judgment being for a mere trifle (17 cents) too much,is not sufficient, ground for a new trial, or reversal : de minimis non curct lea:.
'It is objected that Roberts could not recover against Caldwell, his co-surety, without first prosecuting xVic-Chord, his principal, to insolvency by legal process. There is nothing in the objection. The liability of sureties to contribute, attaches as soon as one of them is obliged or compelled to pay the debt. Were the surety paying the debt required to wait until he prosecuted the principal to insolvency, the consequence might be the exoneration of his co-surety by lapse of time. The co-surety mi£^ become insolvent pending the litigation. By suchr-rneans and doctrines, a total loss might fall on the surety paying the debt, which it is the object and policy of the law to prevent.
It is said that the verdict and judgment are for too much. The half of the sum for which the slaves sold, is five hundred fifty three dollars twelve and three fourths cents. Deduct from this sum the three hundred forty two dollars ninety seven cents,'paid by Caldwell to Roberts, on the day of sale, and there will remain two hundred ten dollars fifteen and three fourths cents, which, with interest up to the date of the verdict, should have limited the extent of Roberts’ recovery. Tested by this criterion, the verdict and judgment are for seventeen cents too much. This excess is of such a character, that the maxim de minimis non curtí, lex embraces it. The costs of a new trial would probably amount to twenty times as much, and before the ensuing term, the interest accruing would have exceeded it more than eighteen times. See Luckett vs. Clark and Anderson, Litt. Sel. Ca. 180, and Smith vs. Surber, 2 Marsh. 450.
Judgment affirmed, with costs and damages.