CALLANAN *et al.* v. SHAW.

24 441
98 361
24 441
123 505

1. Evidence: OF WITNESS NOT CREDIBLE. The evidence of a witness who is not credible, if corroborated and not contrary to reason, ought not wholly to be disregarded. Nor is the evidence of a witness who is shown to have testified falsely upon a material fact to be disregarded unless such testimony be knowingly and willfully false. The maxim *falsus in uno falsus in omnibus* is to be applied only where the witness willfully and knowingly gives false testimony.

2. —— DEMEANOR OF WITNESS. The manner of the witness in testifying, and his demeanor, conduct and appearance before the jury, are proper matters to be considered in weighing his testimony. All questions of credibility and the weight of testimony are for the jury to decide.

3. Usury: PAYMENT. Where money is borrowed at usurious interest, and a part thereof, with the usury, is paid, and a note given at a legal rate of interest for the balance, the contract is tainted with usury.

4. —— ASSIGNEE OF USURIOUS NOTE. If the maker of a usurious note represents to a person about to purchase the same, that there was no usury in it, and such person takes it upon the faith of such representations, and without any knowledge of its being usurious, the maker is estopped from afterward setting up the defense of usury; *aliter*, if such representations were not relied upon or the assignee had knowledge of the usury.

5. New trial: CONFLICTING EVIDENCE. Where the evidence is conflicting, and the mind of the court is not convinced that the verdict falls

short of an honest and sound exercise of judgment, from which manifest injustice will result, the judgment will not be disturbed.

6. —— CORRECTION OF VERDICT. If, through a mistake on the part of the jury in calculating interest or their failure to allow interest, the verdict is for too small an amount, the court being satisfied of the correct amount, may render judgment therefor, if the defendant elects to submit to such judgment, rather than to an order granting a new trial. So, on the other hand, when the verdict, through mistake or other cause, is excessive, the court will deny a motion for a new trial if the plaintiff is willing to remit the excess, and render judgment for the true amount.

7. —— INCONSIDERABLE ERROR IN VERDICT. Where, on appeal to the Supreme Court, it was urged that the judgment of the court below was for a sum ranging from $2.83 to $10.53 less than the appellant was entitled to, it was *held*, that the error was too inconsiderable to warrant a reversal of the judgment and the opening up of an expensive litigation incident to a new trial.

8. Usury: TAINTS ALL CONTRACTS. The provisions of the statute against usury apply, not only to contracts for the loan of money, but to those for the purchase or sale of real estate, and to all other contracts wherein an unlawful rate of interest is provided for.

9. Evidence: IMPEACHMENT. It is not proper, for the purpose of impeaching a witness, to ask him what he thought he made oath to concerning a certain matter in his sworn petition. The foundation for such a question would have to be first laid by showing the witness the petition, and then asking him if he had sworn to it.

*Appeal from Polk District Court.*

TUESDAY, MAY 12.

THIS was an action in chancery to foreclose two mortgages executed by defendants, Alexander Shaw and wife; the first to secure a note for $2,008.16, to J. A. Williamson, dated June 4, 1857, due in six months, and by him assigned, September 7, 1857, to J. Callanan, who soon after assigned the same to plaintiffs; the second, to secure a note for $550, to plaintiffs, dated September 5, 1857. These mortgages were upon the same real estate. The action was commenced July 9, 1861, and brought to trial

at the special June Term, 1867, and a final decree rendered on the fourteenth day of August, 1867.

The only issue presented finally by the pleadings was that of usury in the notes secured by the mortgages, which was submitted to a jury, who found thereon for defendants, and returned a verdict for plaintiffs for $1,778.09, being the amount of the indebtedness of defendant Alexander Shaw, on said notes, after being purged of usury, without interest. A motion was made by plaintiffs to set aside this verdict, because the amount thereof was too small — being less than was shown by defendants' evidence to be due plaintiffs, because of the admission and exclusion of certain evidence, and because of the giving and refusing of certain instructions, and for some other reasons that are not relied upon in the argument of plaintiffs' attorney. Before this motion was determined by the court, defendants, admitting the fact that the verdict was too small, consented that a judgment should be rendered in the sum of $1,848.70, which was done, and a decree entered, foreclosing the said mortgages. Plaintiffs appeal.

*S. Sibley* for the appellants.

*C. C. Nourse* for the appellees.

BECK, J. — In the examination of the points made

1. EVIDENCE: of witness not credible.

against the rulings of the court below, we will notice them in the order in which they are presented in the printed argument of plaintiffs' attorney.

I. It is urged that the twelfth instruction, given by the court to the jury, is erroneous. It is as follows: " If you find, that there is a conflict in the evidence and in the statements of the witnesses, it is your duty to reconcile such evidence and statements if you can. If you cannot, then you are to be the judges of the weight and credibility

of each witness' testimony, and take into consideration the appearance of the witnesses on the stand, their manner of testifying, and whether or not they are corroborated by other evidence. You must give them such weight as in your sound judgment you think they are entitled to." The ninth, tenth, eleventh and twelfth instructions presented by plaintiffs and refused by the court, it is claimed, correctly embodied the law upon this point. The ninth and tenth instructions read as follows : Ninth, " That no important fact can be proved without, at least, the testimony of one credible and unimpeached witness." Tenth, " That if the jury believe that the testimony of Shaw is false, in any one material statement or fact, they have a right to reject the whole testimony." The eleventh instruction is to the effect, that if the jury believe a certain fact which is therein stated, and which the witness Shaw denied, then, in the language of the instruction, " said Shaw has testified falsely in a material point or fact and the jury have a right to reject his whole testimony." The twelfth instruction, which is considered by plaintiffs' attorney in connection with the foregoing, seems to contain no principle analogous to that embodied in them ; it will, therefore, be properly considered separately.

It is impossible, from the nature of things, for the law to provide rules which shall determine the *quantity* or *amount* of evidence necessary to establish a fact in judicial proceedings. There can be devised no standard —no unit of measurement, whereby we may determine just what measure of evidence shall be required to prove a fact in issue. To say that one credible witness is necessary, is a very unsatisfactory and indefinite rule indeed. As a matter of fact, evidence can usually be brought before a jury only through the medium of human testimony ; there must, of necessity, be a witness, or one

standing in that position, through whom the fact can be brought to the mind of a court or jury.

The law raises certain presumptions and dispenses with proof in certain cases, as when the execution of an instrument, the foundation of a suit, is not denied under oath, it is presumed without proof. But when proof is not thus dispensed with, no fact can commonly be brought to the knowledge of a court except it rests on human testimony.

There must be, then, in most cases, to establish a fact, a witness, whether that fact be important or unimportant. But this rule gives no measure for the quantity of evidence, for knowledge, intelligence, qualities of memory, and all other attributes that make up ability, together with those moral qualities which constitute credibility, are most unequally united in men, so that one possessing all the attributes of ability and credibility in the highest degree, and so known to the tribunal before whom he testifies, would, in his evidence, outweigh an indefinite number of witnesses who possess the same attributes in the lowest degree. It is also true, that a witness, in order to prove a fact by his evidence, must be credible — he must be such a witness as will be entitled to receive the belief, the faith of others. But here again, from the very nature of the case, there are indefinite degrees in this character we call credibility. One may possess it in the highest degree, another in the lowest degree. It follows, therefore, that when evidence is weighed, to determine whether a fact has been proven thereby, all the qualities going to make up what is termed ability and credibility in a witness must be fully considered in order to arrive at a truth. And who should so weigh and consider these qualities? Most evidently the jury. The court cannot discharge this duty for them, because the very opinion which they may form upon these questions of ability and credibility in truth determines their finding. If the witness

shows himself to be unworthy of credit in any degree, or wanting in knowledge or intelligence to any extent, these are facts which a jury must consider in determining the weight of his evidence. If the witness, from want of intelligence, or from any other cause, is incompetent under the rules of law, the court will not permit him to testify, but when the evidence of the witness is before the jury, all questions of credibility are for them, and for them alone. See Starkie on Evidence, 443, 444; *Hollings-worth* v. *Pickering*, 24 Ind. 437; *Wickliffe* v. *Lynch*, 36 Ill. 211; *Bell et al.* v. *The People*, 14 id. 433; 1 Philips Ev. (Cowen & Hill's and Edwards' notes) 714, note 194; *McCrary* v. *Crandall*, 1 Iowa, 117; *Brockman* v. *Berry-hill*, 16 id. 185; *Brown* v. *Jefferson Co.*, id. 346.

It is plain, that the evidence of a witness, possessing in the lowest degree the qualities of credibility, if in itself reasonable, and corroborated by other evidence, would be of great weight in arriving at the truth. Uncorroborated, it would fail to convince; and if unreasonable also, it would be of no weight whatever. The corroborating facts and the reasonableness of a hypothesis together might fail to convince, but the evidence of a witness, in himself wanting in credibility, might give such additional weight of evidence, that the hypothesis becomes to our minds a fact. Without one of these ingredients the evidence has no weight; with them all, it is satisfactory, and the mind settles down into belief of the fact. The evidence of a witness who is not credible, if corroborated and is not contrary to reason, ought not to be disregarded. *Blanchard* v. *Pratt*, 37 Ill. 246; *Crab-tree* v. *Hagenbaugh*, 25 id. 240; *Meixsell* v. *Williamson*, 35 id. 531. Neither is the evidence of a witness to be disregarded, who in any material fact testifies falsely, unless such testimony be knowingly and willfully false, for it may result from an honest mistake, an infirmity

of memory, or want of comprehension of the subject, whereby his honesty would in no degree be impeached. The maxim, *falsus in uno, falsus in omnibus*, is applied to cases only where the witness willfully and knowingly gives false testimony. *Brennan* v. *The People*, 15 Ill. 516; *Crabtree* v. *Hagenbaugh*, 25 id. 240; *The Santissima, Trinidad and St. Andrea*, 7 Wheaton, 338.

The manner of the witness in testifying, and his demeanor, conduct and appearance before the jury, are

2. —— demeanor of witness.

proper matters to be considered in weighing his testimony. *McCrary* v. *Crandall*, 1 Iowa, 118; *Brown* v. *Jefferson Co.*, 16 id. 346. It may be, that the application of this last rule will not always lead to the truth, but what rule, applicable to the actions of men, whereby we judge them, is infallible? It ought to be applied by the jury with great caution, and only in cases where other tests fail, or where there are no other means of determining the character of the witness and the truthfulness of his testimony. We adopt the rule in our intercourse with men in the affairs of life, and whether we recognize it or not, it will operate in the administration of justice. Contrary statements may be made by persons who are strangers to us, of whose credibility we know nothing; we will believe the one whose appearance, deportment and manner, impress us most favorably. In this, we are guided by our knowledge of human nature, which, in some, appears to be almost intuitive. The very same reasons for belief would, of necessity, operate upon a jury when like evidence, under like circumstances, should be submitted to them.

The language of the twelfth instruction asked by plaintiffs is as follows: " That if the jury believe the said A.

3. USURY: payment.

J. Stevens & Co., loaned A. Shaw, on the fourth of June, 1857, the sum of $574.75, on his two notes, although more than legal interest was included in said notes, yet, as the $550 note and mortgage

were not given till 5th of September, 1857, which amount is for a sum less than originally loaned, said note and mortgage are not usurious, unless the jury believe there was not so much due the said A. J. Stevens & Co., at the time the said $550 note was given."

This instruction excludes the idea of payments upon the notes for the $574.75 borrowed; that very fact was in contest before the jury, and they were requested by plaintiff to render a special finding thereon. Now, if $574.75 were absolutely loaned, from June 4, 1857, and a contract to pay usurious interest thereon entered into, and on the 5th of September, 1857, three months after, the amount was settled by a note of $550, *without any payments* there would be no usury in such note. But the instruction is not so qualified, and imports that there is no usury in the transaction, if the precise difference between the sums, together with the usurious interest, had been paid by the debtor. When money is borrowed at usurious interest, and a part thereof, with the usury, paid, and a note given at a legal rate of interest for the balance, the note is tainted with usury. *Garth* v. *Cooper & Smith*, 12 Iowa, 365; *Smith, Twogood & Co.* v. *Cooper & Clark*, 9 id. 376; *Campbell* v. *McHarg*, id. 354. This twelfth instruction of plaintiffs was therefore properly refused.

II. The second point made by the plaintiffs is, that Shaw is estopped to set up the defense of usury to the larger note, because he informed plaintiffs, or rather plaintiffs' assignee, before its purchase, that there was no usury in the note. This is a question of fact which was within the province of the jury to determine. There was great conflict of evidence, and we are unable to say that their finding is not correct.

The instructions upon this branch of the case which were given to the jury, seem to be quite an accurate expression of the law. They are to this effect: that if

4. —— assignee of usurious notes.

Shaw represented to the plaintiffs, prior to their purchase of the larger note, that it was all right, and that there was no usury in it, and they took it, relying upon such representations, and without any knowledge of its being usurious, he is estopped from setting up the defense of usury. But if plaintiffs knew at the time they purchased the note that it was usurious, such representations of Shaw, if he made them, would not operate as an estoppel.

The instruction upon this point asked by plaintiffs, is erroneous because it is to the effect, that the declaration of Shaw itself, without the qualification that it was relied on by plaintiffs, and that they were ignorant of the existence of usury in the note, would work an estoppel against Shaw's defense of usury.

III. The third, fifth and sixth points are substantially, that the verdict of the jury is contrary to the evidence, 5. NEW TRIAL: and should, therefore, have been set aside. conflicting evidence. After a careful examination of the record, we are free to admit, that there is very great conflict in the evidence of the respective parties and of their witnesses. We find, too, that there are frequent occurrences, in the evidence of both sides, of what may be called contradictions. We readily see from the evidence, that the witnesses of both parties were but men burdened with infirmities of memory and of feeling, and doubtless more or less wrought upon by interest — a condition and result common, inevitably to all men, from which the highest degree of integrity will not perfectly relieve them. Under our system of jurisprudence, the wisdom of which the experience of ages has approved, a jury of twelve honest men are provided as the most efficient and certain means by which a court of justice can draw truth out of such chaos of conflict and contradiction. It is a well settled doctrine, and often recognized by this court, that, in cases of conflict of evidence, when the mind of the court,

called upon to determine the question, is not convinced that the verdict falls short of an honest and sound exercise of judgment from which manifest injustice will result, it will not be disturbed. The record fails to satisfy us that the verdict is not right and would not be repeated by another jury. It should not, therefore, be set aside.

IV. If, through mistake or any other cause, a verdict is excessive, the court, being satisfied of the fact, and what sum is the just amount to which the plaintiff is entitled, will, in order to do equity and avoid the expense of a new trial to the parties, give the plaintiff his election to remit the excess above the amount that is justly due him, or to submit to an order setting aside the verdict and directing a new trial.

6. —
correction
of verdict.

The very same reasons, given to sustain the power of the court thus to render judgment for a sum less than the verdict, are equally applicable and conclusive in support of the right to render judgment for more than the verdict in proper cases, when, in the estimation of the court, it is too small, and the defendant elects to submit to such judgment rather than to an order for a new trial. The plaintiff is dissatisfied with the amount of his verdict, and appeals to the court for relief from its injustice. The court thereupon finds, that he ought, of right, to recover an additional sum, which the defendant concedes. Under such circumstances, a new trial could not be granted without the violation of justice as recognized by the tribunal chosen by the law for its administration. The plaintiff is tendered a judgment for a sum which the court declares is his just due — the very measure of justice, as fixed by the conscience of the court. He ought to accept it. But if he refuses it, and the court thereupon allows a new trial, it thereby aids him in an attempt to recover more than the judgment and conscience of the judge has fixed as the sum to which he is

justly entitled. In a word, the court determines he is entitled to a certain sum, and offers judgment therefor; if he can refuse to accept and demand a new trial, the judicial determination of his rights thus had, is disregarded and made subservient to his own claims and his efforts to enforce them. But inasmuch as justice, which is the end and object of the law, is attained by the judgment, the plaintiff must accept it, and a new trial should be refused. Upon this reasoning, we conclude that the court did not err in entering the judgment for an amount greater than the verdict, and thereupon refusing a new trial upon plaintiff's motion.

It may be further remarked, that the deficiency in the amount of the verdict resulted from a mistake of the jury in calculating interest, or a failure to allow sufficient interest upon the notes, or one of them. Many cases may be found supporting the doctrine, that for an omission of the jury to allow interest, or a failure to find a sufficient amount, a new trial will not be allowed, especially if the verdict can be corrected without it.

V. It is urged, that the judgment, as entered by the court, is not equal to the amount due plaintiffs by a sum varying from $2.83 to $10.53, changing the calculation to conform to different views of the evidence. Without making any investigation upon this point, in order to determine whether there is an error to the extent claimed, we are of the opinion that, even should it be found that there is an actual error in the judgment in either of the amounts, they are too inconsiderable to warrant this court to reverse the ruling of the court below, and thus open up tedious and expensive litigation, which would cost the plaintiffs a sum many fold greater than the largest they have indicated as the error in the judgment. The trifling sums which, it is claimed, they will lose, will not justify

7. —— inconsiderable error in verdict.

·us in imposing upon the parties, and on the public, the great expense of again trying this cause. Courts of appeal have refused to grant new trials in similar cases when errors of greater sums were found in the judgments, for the reasons we have given above. *Buddington* v. *Knowles*, 30 Conn. 26; *Caldwell* v. *Roberts*, 1 Dana, 355; *Luckett* v. *Clark*, Litt. Sel. Cas. 178; *Van Slyck* v. *Hogeboom*, 6 Johns. 270; *Hunt* v. *Burrel et al.*, 5 id. 136; *Smith* v. *Surber*, 2 Marsh, 450.

VI. It is urged by plaintiffs' attorney, under his seventh point, that upon the larger note plaintiffs are entitled to recover the amount of the same, after deducting usury, with six per centum per annum interest. The evidence tends to show, that the consideration of that note, without the usury, was $1,417.59; $1,000 of that sum was for land bought by defendant, Shaw, and the balance for divers sums of money loaned to defendant. It is urged, that, in order to constitute usury in a note or contract, it must have been given for a loan of money, and the usury must have been paid, or agreed to be paid, at the time of the original loan. That, therefore, though there may have been an agreement to pay unlawful interest upon the $1,000 for the price of the land, yet, not being a loan, it is not usury; and inasmuch as the usury is claimed to have begun when the note was given for the balance of defendant's indebtedness, and not at the origin of that indebtedness, the note is exempted from the operation of the statute against usury, and while the usury cannot be recovered, the lawful consideration of the note may be with six per centum per annum interest. The statement of this proposition is its own effective refutation. The authorities cited to sustain it very clearly teach a contrary doctrine.

The language of section 1791 of the Revision, which provides the penalty for violations of the law regulating

HARVARD
LAW SCHOOL
LIBRARY

interest, can, by no reasonable construction, be applied to contracts for the loan of money or property only; it applies to any contract of purchase 'or sale of property wherever an unlawful rate of interest is provided for, as well as to contracts for loans. Neither by any fair construction of its language, does *Burrows & Prettyman* v. *Cook & Sargent* (17 Iowa, 443), which is cited by plaintiffs' attorney, sustain his very novel views upon the subject. In this case is discussed the distinction between a sale of exchange and the loan of money, in order to show that the first transaction is not usurious; the language used, considered with the context and the subject under discussion, will not sustain the construction attempted to be put upon it. The second part of this proposition is equally untenable, and the authorities cited to support it, not only fail so to do, but really refute it. It can hardly be seriously argued, that when money is loaned at a lawful rate of interest, but afterward a note given for it at an unlawful rate, that such note is not usurious. This is the precise point made and boldly argued in this case; its best refutation is its distinct statement. The true rule is unquestionably this: when a contract for the payment of money or property, whatever be the nature of the consideration, directly or indirectly, is made to bear an unlawful rate of interest, or wherein unlawful interest in any way enters, it is usurious.

VII. The ninth point of plaintiffs' argument presents the questions made in his first and second assignments of errors, and covers alleged errors in the ruling of the court upon the admission and exclusion of evidence. They are but referred to in the argument, and will be briefly noticed.

9. EVIDENCE: impeachment.

The witness Shaw made certain statements in regard to the payment of money on another note held by another party, which was objected to as irrelevant.

The evidence was properly admitted, as it appears to have been received, in connection with evidence of the declaration of one of the plaintiffs, in an attempt to show on the part of the defendant, some business relation between the plaintiffs and the one to whom he made the payment. It tended to throw light on the business transactions and relations of the parties.

The witness was asked to state what he thought he made oath to concerning a certain matter in his petition. An objection to this question was sustained. The object of the question was to lay the foundation for contradicting or impeaching the witness; it was improperly framed. It might have been proper to have stated the particular matter, and then asked him if he had made oath thereto, or the better, and probably the correct practice, would have been to have shown the witness the petition, and then asked him if he had sworn to it.

The introduction in evidence by the defendant, of the assignment of the first mortgage by Williamson, was objected to by plaintiffs but admitted by the court. It was an exhibit to plaintiffs' petition, and could have been used by defendant as evidence in his behalf without formal introduction.

It is claimed, that other evidence elicited by defendant was immaterial and irrelevant. We find no such errors in the record, and think that the rulings of the District Court upon the evidence, as upon all other points to which our attention has been called, are correct.

Affirmed.

COLE, J., having been concerned as counsel in the case, took no part in its determination.