### SMITH *v.* GUNN.

*(Supreme Court, General Term, Fifth Department. January 24, 1891.)*

APPEAL—REVIEW—WEIGHT OF EVIDENCE.

> The complaint, in an action on a promissory note, of which plaintiff claimed to be the transferee of the payee, since deceased, alleged that defendant signed the note by the name of E. J. Gunn. The note showed the name of "E. J. Gun" as maker. Plaintiff testified that defendant delivered the note to the payee, that it was for money loaned, and that defendant afterwards promised plaintiff that he would pay the note. Defendant denied that he signed the note, or had ever borrowed money from the payee, or had any conversation with plaintiff about the note. Plaintiff's reputation for truth was attacked, and an unsuccessful attempt at rebuttal was made. Several witnesses testified that in their opinion the note was not in defendant's handwriting. Plaintiff neglected to call a witness who, if her testimony were true, could have corroborated her. *Held*, that a verdict for plaintiff would be set aside as against the weight of the evidence.

Appeal from circuit court, Cattaraugus county.

Action by Emma J. Smith against Edward J. Gunn. From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial on a case and exceptions, defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*G. W. Cole*, for appellant. *J. K. Wood*, for respondent.

DWIGHT, P. J. The complaint alleged that "on the 3d day of May, 1884, at Little Valley, N. Y., the defendant made his promissory note, dated that day, whereby, by the name of E. J. Gunn, he promised to pay to Sally Kelly or bearer two hundred dollars, with use, one year from the date thereof;" and that the said Sally Kelly, for value received, sold, transferred, and delivered the said note to the plaintiff. On the trial the plaintiff produced and put in evidence a paper purporting to be a promissory note, in the terms above stated, but which bore on its face the name "E. J. Gun" as that of the maker. She testified that in May, 1844, she was living with Sally Kelly, who was her grandmother; and that the defendant some time in that month brought the note in evidence to Mrs. Kelly, and delivered it to her, and told her it was for money he had of her; that her grandmother could not read, and the defendant read the note to her; that in August, 1884, her grandmother gave her the note for labor, and told her if Mr. Gunn did not pay it to sue it; that she lived with her grandmother about three or four years, and took care of her for twelve shillings a week; that she never spoke to Mr. Gunn about the note, except that in March before it became due she asked him if he was going to pay it, and he said he would pay it in the spring. She testified that before the note was given the defendant was often at her grandmother's house, and she "heard talk between them in re-

gard to loaning money;" that she saw her grandmother give him $15 at one time and $10 at another time; and that in June after the note was given she saw her give him $100; that her grandmother died the winter before the note was due. She also testified that one John Gleason was present when the defendant delivered the note to Mrs. Kelly; that she was at the time of the trial 30 years of age and was living with John Gleason, and had done so for 4 years, and that there was no one else in the family except herself and Gleason; that she was not a married woman, but had one child, born when she was 18 years old. No other testimony was given in support of the plaintiff's case, except of witnesses called in rebuttal for the purpose of sustaining her character. The defendant was called in his own behalf, and testified that he did not write or sign the note; that he never wrote his name "Gun;" that he did not deliver the note to Mrs. Kelly; that he did not see her for two years before she died, and that he never had any money of hers; that he was appointed her administrator; that he did not pay her funeral expenses, because John Gleason, with whom she was living at the time of her death, agreed to pay them; that Gleason sued him in the supreme court for those expenses, and that the case was decided in his (the defendant's) favor; that this was before he received notice from an attorney that this note was left with him; that he never had any conversation with the plaintiff about the note, and that he never saw it until it was in the hands of an attorney. The defendant called six witnesses, justices of the peace, attorneys, and others, of the vicinity, who were familiar with the handwriting of the defendant, all of whom testified that in their opinion the signature to the note was not in his handwriting. Several witnesses also testified that the reputation of the plaintiff was bad, and that they would not believe her under oath. Some of them spoke on cross-examination of her reputation in respect to the manner in which she lived with John Gleason, and one of them testified that she seemed to be the tool of Gleason in every respect. The attempt to sustain her character, in rebuttal, was not very successful. All of the witnesses called by her on that question, who knew of her reputation at all, testified that they had heard it called in question. Upon this case the jury rendered a verdict for the plaintiff. We think it should have been set aside on the motion for a new trial on the ground that it was against the clear preponderance of the evidence.

In *Syms* v. *Vyse*, 2 N. Y. St. Rep. 106, it was held by the general term in the first department that in a case where both parties were sworn and contradicted each other directly, and no circumstance corroborating either appeared by the record, the burden of proof, which was upon the plaintiff, was not successfully borne, and a verdict in his behalf could not be sustained; and the cases of *Raines* v. *Totman*, 64 How. Pr. 493, and *Losee* v. *Morey*, 57 Barb. 561, were cited as authority for the decision. The present case is a much stronger one for the application of the rule of the burden of proof. Here the plaintiff made no proof except by her own testimony, which was not corroborated by any circumstance, but was contradicted in every particular by the defendant; and her credibility as a witness was strongly impeached. The testimony of the defendant, on the other hand, was corroborated by the evidence, which tended to show that the note and its signature were not in his handwriting, which was as satisfactory as evidence upon that question can often be made. There was also in this case a circumstance which was entitled to some weight against the plaintiff. That was the fact that the plaintiff had it apparently in her power to call a witness who, if her testimony was true, was, besides the parties, the only living eye-witness of the transaction upon which her cause of action depended, and she neglected to call him. That witness was John Gleason, the man with whom she was living at the time of the trial, and had lived for several years; whose relations to her were apparently not unfriendly, and who knew whether the testimony she had

given was true or false. The omission to call that witness, or to account for not calling him, was, as the record stands, a potent circumstance against the theory of the plaintiff's case. Phil. Ev. (Cow. & H. and Edw. Notes,) p. 473; *People* v. *Dyle,* 21 N. Y. 578; *People* v. *Hovey,* 92 N. Y. 554, 559; *People* v. *Bodine,* 1 Denio, 281. Whether this circumstance was brought to the attention of the jury we are unable to say, because the charge of the court is not in the record; but it would seem that it might well have been. In our opinion, this record discloses not a balanced case as in *Syms* v. *Vyse, supra,* but one in which the evidence so strongly preponderated in favor of the defendant that a verdict in favor of the plaintiff ought not to stand. The judgment and order appealed from must be reversed, and a new trial granted, with costs to abide the event. All concur.