(11 Misc. Rep. 340.)

CAMPBELL PRINTING PRESS & MANUF'G CO. v. YORKSTON.

(Common Pleas of New York City and County, General Term. February 4, 1895.)

1. PRESUMPTION OF SETTLEMENT—GIVING NOTE.
    The giving of a promissory note is prima facie evidence of an accounting and settlement of all demands between the parties, and that the maker was indebted to the payee on such settlement to the amount of the note, and the maker cannot offset a claim against the payee, alleged to have accrued before the making of the note, without rebutting such presumption.

2. FACTORS AND BROKERS—COMMISSIONS—VOLUNTARY SERVICES.
    A broker who procures a purchaser for property, without the request of the vendor, cannot recover compensation from the vendor.

3. EVIDENCE—BURDEN OF PROOF.
    Where the party on whom rests the burden of proof testifies unqualifiedly in support of his contention, and the other party unqualifiedly testifies to the contrary, and there is no evidence in the case corroborating him who had the burden of proof, he fails to make out his case.

Appeal from city court, general term.

Action by Campbell Printing Press & Manufacturing Company against Robert P. Yorkston. From a judgment of the city court (30 N. Y. Supp. 1130), affirming a judgment rendered on the verdict in favor of defendant, and an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before BOOKSTAVER, BISCHOFF, and GIEGERICH, JJ.

Charles De Hart Brower, for appellant.
John Reilly, for respondent.

BOOKSTAVER, J. This action was brought on a promissory note for $65.10, dated August 23, 1889, payable one month after date. Defendant admitted his liability upon the note, but set up a counterclaim for commissions upon the sale of five printing presses made between July, 1889, and March, 1890. From the evidence it ap-

peared that the defendant had been in plaintiff's employ as a sales-man in its western office, prior to 1884, upon a commission of 10 per cent., by special contract, on all presses sold in the West. He left plaintiff's employment in 1884, under an agreement, for a con-sideration of $4,500, that he would not sell any of plaintiff's presses for three years. Prior to January, 1889, defendant was employed by another concern selling presses, and in September, 1889, went with another rival concern, and is now in the employ of a third. Defend-ant had no conversation with plaintiff's officers between 1884 and 1890. In the latter year, and many months after the note was made, and after the sale of the presses for which commission is asked, he had a conversation with the plaintiff's president, who told him, as defendant testifies: "You bring the customer here, and we will fix you. That is all right." This took place just prior to a trip which defendant was then about to make on his own business. There is no other evidence of any employment of defendant by plaintiff after he left their employ in 1884, and the only evidence as to what de-fendant did in reference to the sales in question was that Mr. Price, who had been a customer of the plaintiff, told defendant he wanted plaintiff's presses; that defendant said, "Why don't you go around there," and Mr. Price said, "I don't want to go around there," and then defendant prevailed upon him to do so; that when defendant took Mr. Price to plaintiff's office nothing was said about commis-sions, nor was anything said by defendant that he expected any. He left before any presses were purchased, and the whole transaction, as far as the testimony discloses it, was negotiated and closed by plaintiff's general manager. Defendant at no time made any claim for commissions on these sales prior to setting them up as a counter-claim in his answer to the action brought on the promissory note. Before the action was commenced, plaintiff's counsel wrote defend-ant, asking payment of the note, and in his reply the latter did not claim that it was paid by commissions, but that its payment had been arranged for in May, 1892 (nearly three years after the com-missions now claimed were earned, if they were ever earned), by de-fendant agreeing to send to plaintiff such inquiries as might come to him, and which the Whitlock Company, with whom he was then engaged, could not fill. When defendant first rested, and again at the close of all the testimony, plaintiff's counsel moved for a direc-tion of a verdict in his favor for the amount of the note, on the ground that in May, 1892, there was a settlement between the par-ties, and it was then agreed that the note should be paid in a cer-tain way; that a reasonable time had elapsed, and the note had not been paid, and consequently the plaintiff was entitled to a verdict; and plaintiff also moved to dismiss the counterclaim. These mo-tions were denied, and the case was submitted to the jury, who found a verdict for the defendant for 10 per cent. on $4,500, the purchase price of two printing presses sold by Mr. Price in July, 1889, a month before the note sued upon was delivered.

The giving of a negotiable note by the defendant raised a pre-sumption that a settlement had been had, and that the defendant was indebted to the plaintiff. In other words, the giving of a promis-

sory note is prima facie evidence of an accounting and settlement of all demands between the parties, and that the maker was in-debted to the payee upon such settlement to the amount of the note. Lake v. Tysen, 6 N. Y. 461; Wright v. Wright, 74 Hun, 138, 26 N. Y. Supp. 238.   To overcome this presumption, a very clear prepon-derance of evidence is required.   Blake & Johnson v. Krom (Super. N. Y.) 13 N. Y. Supp. 335.   In the case under consideration the de-fendant offered no explanation as to why he did not insist upon his claim for commissions when the note was demanded of him to set-tle his account, and Mr. Ogden Brower testified:

"The amount for which the note was given was for the balance of Mr. Yorkston's account with us at that time. I wanted to get it closed up, and I asked Mr. Yorkston to give us a note for it, which he said he would do, and he did."

Again, when asked for the payment of the note by plaintiff's at-torney, he did not claim it had been paid by commissions earned, but that the note was to be paid in the way before stated.   In view of these facts, it seems extremely doubtful whether there should have been any recovery for these commissions, even granting that they had been earned.   But, in our judgment, after a careful perusal of the evidence, the defendant failed to show any express or implied employment by the plaintiff to make the sales on which commissions were claimed.   The only evidence of any employment prior to the sale of these presses was in 1884.   After that time, and up to the January preceding this sale, defendant had been in the employ of the Duplex Manufacturing Company, and he himself testified he had no conversation with the plaintiff relative to selling presses for them prior to that time.   It is evident, therefore, that there was no express contract of employment; and from the fact of a former employment, which had terminated, no agency could be implied.   1 Am. & Eng. Enc. Law, 342, and cases cited.   In O'Neill v. Howe (Com. Pl. N. Y.) 9 N. Y. Supp. 746, it is said:

"Ordinarily, the leaving of defendant's employ would terminate the contract for a commission on sales, and any claim for commissions where * * * the claim is based upon work, labor, and services in the sale of goods at defend-ant's request."

The only other ground upon which an employment can possibly be claimed is that, by an acceptance of defendant's alleged service, a promise to pay on the part of the plaintiff may be implied.   But the defendant was not a regular broker.   He did not announce him-self to plaintiff's officers as a broker.   He did not make claim for a commission at the time he introduced Mr. Price, and said nothing from which plaintiff's officers could infer that he had anything to do with bringing the purchaser to plaintiff's place, and he left that place before negotiations had been begun, or any price named or terms mentioned for the purchase.   It is well settled that if a broker, without a previous request, brings a customer to a vendor, and the latter, without further acceptance of the broker's services, takes the customer, the broker is not entitled to compensation. An owner is not obliged to refuse a possible customer because serv-ices, which he has not requested, have been obtruded upon him;

nor can he be enticed into a liability for commissions without his knowledge. Pierce v. Thomas, 4 E. D. Smith, 354; Mechem, Ag. § 600. In order to entitle the broker to commissions, there must either be an actual employment or a ratification and acceptance of the broker's acts; but in such case the intent to ratify must be plain (Pierce v. Thomas, supra), and surely there could be no ratification where no claim was made by the broker, and the fact that he was acting as broker was not drawn to the attention of the seller at the time (Tinkham v. Knox [City Ct. N. Y.] 18 N. Y. Supp. 433, affirmed 2 Misc. Rep. 579, 21 N. Y. Supp. 954; Rorer v. Kellogg, Daily Reg. Jan. 17, 1885; Blomquist v. Arnold, Id. June 25, 1884).

Again, we think there was no sufficient evidence to support the finding of the jury that the rate of commissions in New York City was 10 per cent. It is true, the defendant testified that 10 per cent. was the usual custom where the price asked is given, but he also testified that where the price is reduced the commissions have to suffer, sometimes to the extent of 5 per cent., sometimes $7\frac{1}{2}$ per cent., and even more. It is clear, however, from the defendant's cross-examination, that this commission of 10 per cent. related to his sales made in the West, and not in this city. But, even if it were, he is entirely uncorroborated in regard to it, and is contradicted by Ogden Brower, Mr. Ahlstrom, a witness for plaintiff, and Mr. Bresnon, a witness produced by defendant, who all testified that they knew of no custom in the trade in regard to the amount of commissions, and that the compensation in that class of business was a matter of bargain on each sale. The burden of showing the custom was upon the defendant. Where one party, who has the burden of proof, swears unqualifiedly and explicitly in support of his contention, and the other party as unqualifiedly and explicitly swears to a contrary state of facts, and there is no evidence in the case corroborating the party who has the burden of proof, he fails to make out his case. Stevens v. Trask (Com. Pl. N. Y.) 18 N. Y. Supp. 117; Smith v. Gunn (Sup.) 12 N. Y. Supp. 808; Syms v. Vyse, 2 N. Y. St. Rep. 106. We therefore think the counterclaim should have been dismissed, and a verdict directed for the plaintiff upon the note. The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.