[No. 6290.]

GEIER v. HOWELLS.

1. **Real Estate Broker — Right to Commissions** — A broker who, without employment or authority to do so, participates in a transaction resulting in the sale of a property, cannot recover commissions.—(349)

2. **Broker—Evidence of Employment**—The mere statement by the owner of real estate, to a broker, of the price at which he is willing to sell it, does not amount to an employment.—(349)

3. **Appeals—Finding on Conflicting Evidence**—Where a judgment is not supported, or is but slightly supported, by the evidence, or a fact upon which the prevailing party rests her right, must be supported by clear and convincing testimony, and it is not. The judgment will not be permitted to stand.

A broker sued for commissions on the sale of real property. Without previous employment he had, by accident, brought the parties together. Held that, under such circumstances, evidence of the employment should be clear and convincing. A judgment founded on the uncorroborated testimony of the plaintiff, contradicted by the defendant, and by circumstances in his own conduct, was reversed.—(350, 351)

*Appeal from Denver County Court* — Hon. CHARLES McCALL, Judge.

Mr. J. H. REDDIN, for appellant.

Mr. H. W. SPANGLER, and Mr. D. B. KINKAID, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

This is an appeal from a judgment rendered against the appellant, Geier, in an action brought against him by the appellee to recover commissions for the sale of a house in the city of Denver, belonging to the appellant. The sole question necessary to determine, is, whether or not the testimony is sufficient to support the judgment rendered.

Plaintiff is a real estate broker engaged in that business in the city of Denver. According to his testimony, he took a Mrs. Oakes to a cottage at No. 530 High street belonging to the defendant, which he had listed with him for sale, for the purpose of showing her the property. She was not favorably impressed with the place, and asked him if he had other houses in that neighborhood for sale. He said yes, there was a house across the street; and she wanted to know if he had that for sale, to which he replied he was not certain that he had, but when he returned to his office he would ascertain the price, if it had been listed with him for sale. They then went across the street. Mrs. Oakes was accompanied by her father, and they waited on the front porch while plaintiff went to the rear, entered through the basement, and on reaching the front door, opened it and admitted them. A short time after, Mr. Geier, who was in the neighborhood and had noticed the front door open, entered the house, when, according to the testimony of plaintiff, the following conversation took place:

"I said to Mr. Geier: 'Is this your house, too?' He says: 'Yes, I am building it.' I says: 'Well, I am glad to hear that.' I says: 'This is the kind of house, about, these people want. Is it for sale?' He says: 'Yes.' I says: 'What do you want for

it?' He says: 'Five thousand dollars.' I says: 'I will take you in and introduce you to these people.' He says: 'All right.' I introduced him. I believe Mr. Geier took Mrs. Oakes and pointed out the different advantages, and I took her father, and went along with them. They said they liked it very much, and would like to have Mr. Oakes, Mrs. Oakes' husband, see it Sunday. I told them, all right; I would get my car to take them up Sunday. Mr. Geier says: 'No use your coming up. I can just as well show the house and save you that trouble.' I says: 'If you are going to be here, no use of my coming.' I called him up a few days after that, and said: 'How did you get along?' He says: 'They liked the house very well.' I says: 'What can I do?' He says: 'You just stay away from them.' I says: 'All right; you think you can handle it, go ahead.' The thing went along. I called him up and asked if he had closed the sale, that another party wanted to look at the house; he says: 'I think I can close it, but I cannot pay you full commission out of it at that price,' but he says, 'I will come in and see you.'"

On cross-examination he said that the cottage at 530 High street did not suit Mrs. Oakes, and as there was a new house going up across the street, he suggested that they go over and look at it. Continuing, he says:

"I did not know whether I had it listed at that time or not, and did not know who owned the house. I said: 'We will go and look at this new house, and I will go back to my office and see whether I have it.' We went across the street to the new house and Mr. Geier followed us over. He stopped at the front door and talked with me. I asked him the price, and he said five thousand dollars. I told him I had some parties to look for a house of that kind, and

that it would suit them if it was for sale. I said:
'I will take you in and introduce you to these parties.' He says: 'All right; go ahead and sell.' ''

Plaintiff conceded that defendant had not listed the property with him, and had never said anything to him about selling it, except as above stated.

Mrs. Oakes testified, in substance, that when they came out of the cottage at No. 530 High street, she noticed a new house across the street, and asked him if he had that for sale, and he said he did not know. He had one listed just recently, but didn't know whether that was the house or not, but that they would go over and look at it. She and her father stayed on the front porch while plaintiff went around the house and unlocked the door, and soon after they entered the defendant came to the front door, and plaintiff had a conversation with him there. Later, he called defendant back and introduced him, and he told them the price of the house was five thousand dollars. She states that she did not hear any of the conversation between plaintiff and the defendant. She also says that from the time she first looked at the house all negotiations were continued directly with the defendant.

The defendant testified that he was in the near vicinity when he noticed the parties entering the house; that he went over and met them in the hallway; that Mr. Howells simply asked him who was building the house; that he said he was; that Howells acted very much surprised; said it was a beautiful place; introduced him to Mrs. Oakes and her father, saying he was showing them some houses; that Mrs. Oakes asked him how much the house was worth; that he replied, five thousand dollars. He denied emphatically that he ever told Mr. Howells to go ahead and sell the place, or that he ever said anything to him at all, authorizing him to sell the property.

He also denied that he had ever promised Mr. Howells to pay him any commission on account of the sale, but did tell him he did not think he was entitled to commission on the deal. He sold the property to Mrs. Oakes for $4,850.00.

To entitle a real estate broker to commission, a contract of employment is necessary. When a broker asks and obtains from the owner the price at which he is willing to sell certain real estate, that does not, of itself, establish the relation of principal and agent between the owner and the broker.—*Castner v. Richardson,* 18 Colo. 496. It is also the law, that a broker who, without employment or authority so to do, participates in a transaction resulting in the sale of property to another is not entitled to a commission. —*Merrill v. Latham,* 8 Col. App. 263.

The fact that plaintiff may have found a purchaser ready and willing to buy the property, and who subsequently did purchase it from the defendant, does not impose a liability upon the latter to pay commissions, unless it appears that plaintiff was employed by the defendant to make a sale of the premises.—*Castner v. Richardson, supra; Clammer v. Eddy,* 41 Colo. 235.

The burden was upon the plaintiff to establish that he was employed by the defendant to make a sale of his property, which was sold to Mrs. Oakes. That he had not been employed, and that the property had not been listed with him prior to the time when he introduced Mrs. Oakes to the defendant, stands undisputed. Plaintiff did not know to whom the property belonged when he took Mrs. Oakes across the street to examine it. He then met the owner; inquired of him the price; said he had parties who might buy a house of that kind; introduced him to Mrs. Oakes; and the only scintilla of testimony

upon which to base a contract of employment is his own, to the effect that the defendant told him to go ahead and sell to them.

A judgment based upon facts supported by substantial evidence will not be disturbed on review; but where it is but slightly supported by the evidence, or manifestly against its weight, or where a fact upon which the prevailing party predicates his right to the judgment rendered, must be established by clear and convincing testimony, and it is not, it cannot be permitted to stand. The defendant denied that he made the statement attributed to him by the plaintiff, and the testimony of the plaintiff himself not only corroborates the denial of the defendant, but demonstrates that what he claims the defendant said to him about making a sale to Mrs. Oakes, is altogether improbable. If the defendant had told him to go ahead and sell, he certainly would not have told him, when he offered to take the parties up to see the house the following Sunday, that there was no use for him to do that, that he could just as well show the house and save him that trouble. Certainly, if the defendant had employed him to effect a sale, he would have expected him to do something and would have expected his assistance, and the very fact that he told him not to come, that there was no use of his coming, indicates clearly that he had not employed him, and did not intend to.

Again, if he had employed him, as he claims, by telling him to go ahead and sell, he would not have said to him, a few days later in a conversation over the telephone, when asked by plaintiff what he could do: "You just stay away from them," thus, again, clearly indicating that he never employed him, and did not propose to place himself under obligations for any efforts he might make to sell to Mrs. Oakes.

The plaintiff by accident brought the purchaser and defendant together. Prior to that time he had not been employed to sell the premises. He claims he was then employed by the defendant for that purpose. In such circumstances, the testimony relied upon by him to establish employment should be clear and convincing. It lacks these essential requisites. For this reason, on the record before us, the judgment should have been for the defendant.

*Anderson v. Smythe*, 1 Col. App. 253, and *Cole v. Thornburg*, 4 Col. App. 95, cited by counsel for plaintiff, are not in point. In the first case, it is held that where the sale really proceeds, and is effected through the acts of the agent, he is entitled to his commission, though he did not negotiate the sale; and if the agent introduced the purchaser to the owner, or discloses his name to the latter, and through such introduction and disclosure negotiations are begun and a sale of the property is effected, the agent is entitled to his commission, although the sale was made by the owner. In the second case it is held that to entitle a broker to commissions he must have produced a purchaser able, ready and willing to purchase the property upon the terms and at a price fixed by the owner, and that the broker must be the efficient agent or cause of the sale, and that the means employed by him and his efforts, must result in a sale. Neither of these propositions is applicable where it appears there was no antecedent employment of the broker by the owner.

The judgment of the county court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.