## MONTERO v. MURPHY.

(Supreme Court, Appellate Term.　April 17, 1912.)

EVIDENCE (§ 598*)—WEIGHT OF EVIDENCE.

    The fact that each party unqualifiedly testifies in support of his re-
spective contentions, and there is no evidence corroborating plaintiff, does
not necessarily show a failure to make out his case, requiring a finding
for defendant.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2450–2452;
Dec. Dig. § 598.*]

Appeal from City Court of New York, Trial Term.

Action by Frank Montero against Robert P. Murphy.　From a
judgment for plaintiff, and an order denying a motion for a new trial,
defendant appeals.　Affirmed.

Argued February term, 1912, before SEABURY, GUY, and BI-
JUR, JJ.

Max Henry Salzer, of New York City (Julius Blumofe, of New
York City, of counsel), for appellant.

Ingram, Root & Massey, of New York City (Warren A. Schenck,
of New York City, of counsel), for respondent.

SEABURY, J.　The plaintiff sued to recover a balance alleged to
be due for services rendered to and money laid out on behalf of the
defendant in reference to the boat Athlete, owned by the defendant.
The defendant denied that the plaintiff had rendered the service
which he claimed to have rendered, and contended that he had paid
the plaintiff all that he owed him.　The plaintiff testified in support
of his claim, and the defendant testified in opposition to it.　Other
witnesses were called, but they did not testify to matters of any im-
portance.　The plaintiff went into considerable detail in explaining
his claim.　The testimony of the defendant was not so specific or
definite.　The issue was essentially one for the jury, and their deter-
mination of the issue necessarily depended in a great degree upon
their estimate of the credibility of the plaintiff and the defendant.

No exceptions of merit are presented for our consideration.　The
learned court below submitted the case to the jury in a fair and com-
prehensive charge, to which no exception was taken.　We have care-
fully examined the whole record, and can find nothing in it which
would justify us in setting the verdict of the jury aside on the ground
that it is against the weight of the evidence.　As to the alleged dis-
interested witnesses, who are claimed to have corroborated the de-
fendant, it is sufficient to point out that a careful examination of their
testimony shows that upon the material issue in the case they did not
corroborate the defendant, and that some of them, at least, were not
disinterested.　Indeed, I think it might be said with accuracy that
in several respects these witnesses called by the defendant corrob-
orated the testimony of the plaintiff.

The appellant does not place his chief reliance upon these wit-
nesses, but rests it upon the fact that the issue submitted to the jury

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

was supported only by the oath of a single witness. In his brief he says:

"It is a well-known legal principle, recognized by the courts of this state, that when a party on whom rests the burden of proof testifies unqualifiedly in support of his contention, and the other party unqualifiedly testifies to the contrary, and there is no evidence in the case corroborating him who had the burden of proof, he fails to make out his case."

In support of this supposed legal principle several authorities are cited, and it must be conceded that the statement quoted is but a repetition of the statements made in several cases. See Campbell, etc., Co. v. Yorkston, 11 Misc. Rep. 340, 32 N. Y. Supp. 263; Lummas v. Van Dyke, 17 App. Div. 621, 45 N. Y. Supp. 489, and cases cited. The statement made by the appellant is not a correct statement of any legal principle which is recognized in the jurisprudence of this state. Our law, except in a few rare instances, has abandoned the numerical test for ascertaining truth. It is now a common thing for a judge to charge the jury that they are to weigh the evidence, not merely to count the witnesses called by the respective parties. Our law prescribes no precise formula by which the weight of testimony can be determined. The opportunities of the witness for accurate observation, the manner of the witness in giving his testimony, the way the witness conducts himself under direct and cross examination, the inherent probability or improbability of his testimony, are guides which may aid us in measuring his credibility; but these considerations are far from furnishing us with an accurate scale by which to ascertain its exact weight. It would doubtless be easier to reach a result by counting the witnesses; but this practice has been abandoned as the result of experience.

The unjust and absurd results which were reached when the numerical test was formerly applied are apparent from an examination of some of the cases contained in the old books. Professor Thayer has referred to several of them, and the startling results obtained ought to be sufficient to preclude our returning to such a system. If the appellant's contention is sound, and if any such principle of law exists, a party would be denied a recovery in almost every case where he had no witnesses to corroborate him. In many cases he could not recover, if the person sued chose to contradict him. The supposed legal principle contended for by the appellant, and the cases cited above which hold to the same effect, are but the "waning echo of the ancient formalism," which once prevailed, but which has been displaced from our modern law of evidence. Mr. Chamberlayne well says:

"It is a salient characteristic of the modern English law of evidence that it has, except in treason, perjury, and a few other instances, abandoned, though with some difficulty, its earlier rules, more in accordance with other systems of jurisprudence, requiring a specified number of witnesses. Numerical tests for truth are common in the civil law of continental Europe, which follows in this respect the later Roman jurisprudence. The rule of the earlier French system was in accordance with this almost universal view, and so continued down to a comparatively recent period." Section 989, The Modern Law of Evidence.

It has been said that:

"It was Constantine, who first laid down the arbitrary rule that one witness did not suffice; and the canon law accepted the principle with the more respect, because it was sanctioned in Deuteronomy." Cited by Prof. Wigmore in note 2, § 2032, page 2695.

Professor Thayer, speaking of the early mode of "trial by witnesses," says:

"There was no test by cross-examination. The operative thing was the oath itself, and not the probative quality of what was said, or its persuasion on a judge's mind." A Preliminary Treatise on Evidence at the Common Law, page 17.

Professor Wigmore, commenting on the same subject, says:

"All through the Saxon and Norman times, the oath is a verbal formula, which, if successfully performed without immediate disaster, is conceded to be efficacious per se, and irrespective of personal credit. * * * This numerical conception is inherent in the general formalism of it." Wigmore on Evidence, § 2032, page 2698.

Issues of fact are no longer determined by what Mr. Justice Stephen called "the dead weight of an oath." Hist. Criminal Law, 400. "The probative value of a witness' assertion is utterly incapable of being measured by arithmetic," says Professor Wigmore. "All the considerations which operate to discredit testimony affect it in such varying ways for different witnesses that the net trustworthiness of each one's testimony is not to be estimated, either in itself or in reference to others' testimony, by any uniform numerical standard. Probative effects are too elusive and intangible for that. The personal element behind the assertion is the vital one, and is too multifarious to be measured by rule." Wigmore on Evidence, § 2033.

In summing up his review of the matter, based upon many of the authorities cited by Wigmore, and some of which are referred to above, Mr. Chamberlayne says:

"No numerical or other physical tests for truth obtains, as a rule, in the English law of evidence. Few propositions are presented for judicial determination which may not be satisfactorily established by the evidence of a single witness. A mere numerical preponderance in witnesses produced by one side as to a given point over those produced by the other side can no longer automatically control the decision of a court. A jury may reasonably and properly credit a single witness against many. Nor, on the contrary, is a witness who is uncontradicted, and not directly impeached, entitled as of right to be believed." Section 991.

See, also, Callanan v. Shaw, 24 Iowa, 441, 444; U. S. v. Lee Huen (D. C.) 118 Fed. 442, 457.

Speaking of the "lurking tendency" that still exists to believe that there is a legal necessity for more than one witness, the same author says:

"This is but a recrudescence of the ancient formalism. Occasionally it has been said that the rule of law was to that effect. This is obviously an error."

The same subject is extensively dealt with in the notes to Mr. Wigmore's invaluable work. We have called attention to the matter here, because of the frequency with which the proposition urged by the appellant is pressed upon us as ground for the reversal of judgments.

Judgment affirmed, with costs. All concur.