DILWEG, Appellant, vs. MILWAUKEE MACHINE TOOL COM-
PANY, Respondent.

*April 7—May 3, 1921.*

*Brokers: Volunteered services: Furnishing information as to pros-
pective customer: Promise to compensate broker: Considera-
tion.*

1. A broker is not entitled to a commission if he acts as a mere
   volunteer, though his services are the efficient cause of
   bringing the parties together, but he must have been em-
   ployed to negotiate the contract therefor; and though a
   broker communicated to a manufacturer the fact that a third
   person was desirous of placing an order for motorcycle
   engines, but did not do so pursuant to contract, he acted
   gratuitously and cannot recover a commission.

2. Where plaintiff volunteered to defendant information that a
   third person desired to place an order for motorcycle engines,
   a promise by defendant, who obtained the order, to com-
   pensate plaintiff will not support a recovery, the promise
   not being based on any consideration, and the only services
   on which he relied having already been performed.

APPEAL from a judgment of the circuit court for Milwau-
kee county: W. R. FOLEY, Judge. *Affirmed.*

On or about November 22, 1913, plaintiff was in the
employ of the Gemco Company as an efficiency expert. One
Meisner was employed as shop superintendent by said Gemco
Company, and was endeavoring to place a contract for the
American Cycle Car Company of Bridgeport, Connecticut,
for the manufacture of 10,000 motorcycle engines. Plaintiff
had broached the proposition to a number of manufacturers
in Milwaukee with a view of assisting Meisner in placing
the contract. On November 22, 1913, he discussed the
matter with Theodore Trecker, president of the *Milwau-
kee Machine Tool Company.* Trecker said they were not
equipped for the performance of such a contract, while
*Dilweg* insisted that without great expense defendant's plant
could be equipped for the manufacture of the required num-

ber of engines. *Dilweg* gave Trecker Meisner's telephone number, and as he was leaving he remarked to Trecker, "If you close this I expect mine out of it;" to which Trecker replied, "That's understood." This conversation is also testified to by *Dilweg* to have been as follows: "Now we could all make money out of this and I expect mine out of this;" to which Trecker replied, "That's understood." Nothing further occurred between Trecker and *Dilweg,* and the evidence shows that on or about February 9, 1914, a contract was entered into by the defendant company and the American Cycle Company of Bridgeport, Connecticut, for the manufacture of 10,000 motor engines at an agreed price of $54 each. Whether this contract was the result of negotiations between Trecker and Meisner instituted by Trecker upon the suggestion of *Dilweg* does not appear. When *Dilweg* learned of the consummation of this contract he claimed a broker's commission from the defendant and brought this action to recover the same. The trial court directed a verdict in favor of the defendant, and from the judgment entered thereon he brings this appeal.

For the appellant there was a brief by *Geisenfeld & Geisenfeld* of Milwaukee, and oral argument by *Charles Geisenfeld.*

For the respondent there was a brief by *Quarles, Spence & Quarles* of Milwaukee, and oral argument by *J. V. Quarles.*

OWEN, J. It is well established that "to entitle a broker to compensation he must have been employed to negotiate the transaction in connection with which his services were rendered. In the absence of such employment, or, in other words, where the broker acts as a mere volunteer, he is not entitled to compensation, although his services are the efficient cause of bringing the parties together and result in a sale or other contract between them." 9 Corp. Jur. 554.

See, also, note to *Geier v. Howells* (47 Colo. 345, 107 Pac. 255) 27 L. R. A. N. s. 786. This principle is decisive of this case. The only service rendered by the plaintiff was to communicate to the defendant the fact that Meisner was looking for some manufacturer who would contract for the production of the gasoline engines. There is no pretense that this information was communicated pursuant to any contract of employment, express or implied, on the part of the defendant. The information was volunteered. Under such circumstances the law imposes upon the defendant no obligation to compensate therefor in the nature of broker's commissions. The plaintiff could not by obtruding this information burden the defendant's future negotiations with such a liability. "One is not obliged to refuse a possible customer because services, which he has not requested, have been obtruded upon him." *Campbell P. P. & M. Co. v. Yorkston,* 11 Misc. 340, 32 N. Y. Supp. 263.

Conceding that the colloquy set forth in the statement of facts amounted to a promise on the part of Trecker that a broker's commission would be paid to plaintiff if a contract were consummated, it is apparent that there was no consideration for the promise, as the only services rendered by the plaintiff upon which he relies as entitling him to a commission were already performed. *Sharp v. Hoopes,* 74 N. J. Law, 191, 64 Atl. 989. The suggestion made by Trecker, if made at all, that plaintiff would "get his" in case a contract was entered into, amounted to nothing more than a gratuity, and was wholly lacking in the essentials necessary to constitute a legal obligation. A verdict was properly directed in favor of the defendant, and the judgment should be affirmed.

*By the Court.*—Judgment affirmed.