## FOWLER et al. v. HOSCHKE.

(Supreme Court, Appellate Division, Second Department. July 9, 1900.)

REAL-ESTATE BROKERS—COMMISSION.

　　Plaintiffs had been employed by the purchaser of property to effect an exchange of lands between the purchaser and defendant, but failed. Afterwards the purchaser personally negotiated a sale of the lands with defendant. Plaintiffs said nothing about commission until about a month after the contract was signed, when they presented a bill for commission. *Held*, that defendant was not liable to plaintiffs for commission, since there was no previous employment of plaintiffs, or subsequent acceptance of services rendered by them.

Appeal from municipal court.

Action by Joel Fowler and another against Maria Hoschke. Judgment for plaintiffs, and defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Robert R. McKee, for appellant.

Emanuel G. Bullard (Edward F. Bullard, on the brief), for respondents.

WOODWARD, J. This action was brought to recover $110 claimed to be due the plaintiffs as commissions for procuring a purchaser for certain real estate owned by the defendant at Richmond Hill, Queens county. The trial resulted in a judgment against the defendant for the amount claimed, with costs of the action, and from that judgment the defendant appeals to this court.

The appellant urges that it was error to admit in evidence certain correspondence between the plaintiffs and the defendant's husband, in reference to the sale of this property, on the ground that it was not shown that defendant's husband was authorized to act as her agent in the employment of the plaintiffs, and that his letters could not bind the defendant. In the view we take of this case, it is not necessary to decide the point; for, if it be admitted that the defendant's husband was authorized to act in her behalf (and the only evidence of such agency is found in the fact that he signed a contract of sale as attorney for his wife, who subsequently executed a deed in pursuance of this contract), there is no evidence in the case which justifies a finding that defendant's husband ever employed the plaintiffs, or that they were ever recognized in the transaction, or that they were the procuring cause of the sale on which commissions are claimed. The letters show that on the 27th day of June, 1899, the plaintiffs wrote to defendant's husband asking if he still owned the plot of ground at Richmond Hill, and, if he did, what was his best cash price. It was stated in this letter: "We have a party looking around in that direction, and may be able to do some business with him later on." To this letter

Mr. Hoschke replied: "I would say that values at Richmond Hill are quoted to me at such varying figures that I am not in a position to suggest at what price I would let my holdings go." After stating the dimensions of the property, the letter continues: "If you have, at any time, any fair offer to submit, I shall be glad to consider it." This expression, he says in his evidence, meant no more than the same language would mean to any private person seeking to purchase the property. On the 10th of August the plaintiffs wrote Mr. Hoschke a letter, which does not appear in the record, and in reply to this letter he says: "I have your favor of the 10th inst., and thank you for your courtesy. I shall be glad to meet Mr. Ring. I shall, however, not be at this office Friday or Saturday of this week, nor Tuesday next betw. 12 and 2 o'clock, nor Wednesday next. Any other day between 10 and 5 o'clock I shall be here, although I should be glad to have Mr. R. make appointment beforehand." It was in evidence that neither of the plaintiffs had seen Mr. Hoschke, and that there was nothing said about commissions, up to the time of the signing of the contract. As to any conversation at that time, the evidence of the plaintiffs is vague and uncertain, while the denial of Mr. Hoschke is positive. The plaintiffs claim commissions as brokers in the sale of the real estate which was made to Mr. Ring, but the only tendency of the evidence is to show that Mr. Ring desired to purchase the property in controversy; that he employed the plaintiffs originally to negotiate an exchange with Mr. Hoschke for other property; that the plaintiffs failed to reach any conclusion with him; that Mr. Ring went to the plaintiffs, and secured the address of Mr. Hoschke, and entered into a personal negotiation with him, which resulted in the sale of the property. It is well settled that if a broker, without a previous request, brings a customer to a vendor, and the latter, without further acceptance of the broker's services, takes the customer, the broker is not entitled to compensation. An owner is not obliged to refuse a possible customer because services which he has not requested have been obtruded upon him, nor can he be enticed into a liability for commissions without his knowledge. In order to entitle the broker to commissions, there must be an actual employment or ratification and acceptance of the broker's acts; but in such case the intention to ratify must be plain, and no ratification could be inferred where no claim was made by the broker, and the fact that he was acting as broker was not drawn to the attention of the seller at the time. Manufacturing Co. v. Yorkston, 11 Misc. Rep. 340, 344, 32 N. Y. Supp. 263, and authorities there cited. The only time that the plaintiffs asserted a right to commissions was when they sent in a bill for the same in September, following the sale in August, and this could give them no rights. The facts in evidence in this case do not bring it within any of the rules laid down for the recovery of commissions by brokers. We have carefully examined the cases to which the plaintiffs call attention in support of this judgment, but they do not establish the right of recovery under the circumstances of this case. There is a lack of evidence of employment, and there is no evidence that the defendant ever accepted any services of the plaintiffs, or that she had any knowledge, or that her husband had any knowledge, that the plaintiffs

made any claim for services in the sale of the premises. To permit a recovery under such circumstances would be a travesty on justice. As was said in 'Carroll v. Tucker, 2 Misc. Rep. 397, 400, 21 N. Y. Supp. 952: "Our conviction that the respondent's claim is without equity reconciles us the more readily to the defeat of his judgment on legal grounds."

The judgment appealed from should be reversed, and a new trial ordered, with costs. All concur.