BERNARD B. BARRETT, Appellant, *v.* ADAM LANG, as Executor, etc., of ANNA LANG, Deceased, and HENRY V. STEBBINS and ADAM LANG, Individually, Respondents.

First Department, December 24, 1934.

*Solomon Hirschhorn,* for the appellant.

*John J. Clarke* of counsel [*Robert J. Sykes* with him on the brief; *Rumsey & Barker,* attorneys], for the respondent Henry V. Stebbins.

*Frank Pascarella,* for the respondent Adam Lang, individually and as executor.

MERRELL, J. Plaintiff brought this action to recover the sum of $750 which plaintiff claims he was entitled to receive from defendant Adam Lang, as executor of the last will and testament of Anna Lang, deceased. The plaintiff joined as individual parties defendant, Henry V. Stebbins and Adam Lang.

Plaintiff, a real estate broker, based his claim for commissions, which he alleges he earned, upon the procurement of a purchaser for premises at 2227 Metropolitan avenue, Brooklyn, owned by the Langs. The defendant Stebbins was joined as an individual defendant under the claim that Stebbins, who was Lang's attorney, was guilty of a breach of warranty of agency. Barrett's connection with the estate of the decedent occurred as the result of a conversation between plaintiff and Stebbins in May, 1930. That conversation apparently related entirely to a prospective appraisal by the plaintiff Barrett of the premises for the purpose of transfer tax proceedings. Presumably this meeting came about as the result of a letter written by Stebbins to Barrett on May 17, 1930, which was as follows:

"MAXFIELD & STEBBINS

"SPARKHILL, NEW YORK.

"*May* 17, 1930.

"Mr. B. B. BARRETT,
554 West 161st Street,
New York, N. Y.

"DEAR SIR: I have been referred to you by Mr. Lyon, of Otto & Lyon, as a licensed real estate broker who is acquainted with values in Queens County and can appraise a very small parcel of a very small estate.

"Please advise me of your qualifications to place a value on such property and also what your fee is, as appraiser. As the estate is small we shall not be able to pay a very large fee.

"Very truly yours,

"HENRY V. STEBBINS

"HVS:RGA "

It will be noted from this letter that it referred, not to a sale of the premises, but merely an appraisal. The letter closes with the statement that the writer wished to be advised of the qualifications of the plaintiff, Barrett, to place a value on the property, and, also, what his fee would be, "*as appraiser*." About a month later Stebbins again wrote Barrett the following letter:

"MAXFIELD & STEBBINS

"SPARKHILL, NEW YORK,

"*June* 19, 1930.

"Mr. B. B. BARRETT,
554 West 161st Street,
New York, N. Y.

"DEAR SIR: Pursuant to our conversation enclosed herewith is the transfer tax affidavit which I asked you to please fill out and

swear to after you have made an examination of the premises and placed a fair appraisal upon them. If you will then please return the affidavit, properly executed before a notary public, to me, together with your bill for services, I shall have my client draw a check. I shall appreciate your early attention to this matter.

" Very truly yours,
" HENRY V. STEBBINS."

In the above-quoted letter Stebbins merely asked plaintiff to make an affidavit stating the proper appraised value of the premises, and have it properly executed before a notary public when plaintiff's bill for services as an appraiser would be paid. Four days later plaintiff wrote Stebbins the following letter, inclosing plaintiff's affidavit of appraisal:

" Washington Heights 9232                    Whitehall 6368
" BERNARD B. BARRETT
Licensed Real Estate Broker
554 West 161st Street
New York

" *June* 23, 1930.

" HENRY V. STEBBINS, Esq.,
        MAXFIELD & STEBBINS,
                Sparkhill, New York.

" DEAR SIR: Enclosed please find affidavit of Appraisal of the property of Anna Lang, Deceased, located on Metropolitan Avenue, Middle Village, Queens County, New York.

" Very truly yours,
" BERNARD B. BARRETT.

" BBB:T "

On July fourteenth Stebbins wrote plaintiff as follows:

" Law Offices
HENRY V. STEBBINS
" SPARKHILL, NEW YORK.
" *July* 14, 1930.

*RE: Estate of Anna Lang*

" Mr. B. B. BARRETT,
        554 W. 161st Street,
                New York, N. Y.

" DEAR Mr. BARRETT: I have been putting off writing you in respect to your appraisal for the reason that I have been very busy with litigated matters. My client advises me that your appraisal of the premises in Queens seems to him a trifle high. On reconsideration could it be in accordance with the fair market

value to reduce the appraisal. I shall be interested in hearing from you in this connection at your early convenience. Upon the receipt of your reply I shall see that my client pays your appraisal fees. Thanking you for your services in this matter, I am,

" Very truly yours,
" HENRY V. STEBBINS.

" HVS:RGA "

Two days later the plaintiff wrote Stebbins as follows:

" Washington Heights 9232          Whitehall 6368
" BERNARD B. BARRETT
Licensed Real Estate Broker
554 West 161st Street
New York
" *July* 16, 1930.

" HENRY V. STEBBINS, Esq.,
Sparkhill, New York.

" DEAR Mr. STEBBINS: Received your letter of July 14, 1930, and after re-inspection and conversations with owners in neighborhood, I think Fifteen thousand ($15,000.00) Dollars, is a fair market value. Affidavit can be corrected to this amount.

" Would you consider an offer of Fifteen thousand ($15,000.00) Dollars for the property? If so will you kindly let me know upon what terms.

" Yours very truly,
" BERNARD B. BARRETT."

At the close of said letter, plaintiff, for the first time, made inquiry as to whether or not Stebbins would consider an offer of $15,000 for the property. On July twenty-fifth Stebbins wrote plaintiff as follows:

" Law Offices
HENRY V. STEBBINS
" SPARKHILL, NEW YORK
" *July* 25, 1930.

" Mr. BERNARD B. BARRETT,
554 West 161st Street,
New York, N. Y.

" DEAR SIR: My client will take Fifteen thousand ($15,000) dollars in cash for the Queens County property.

" Please find enclosed transfer tax affidavit which please sign and return to me.

" Very truly yours,
" HENRY V. STEBBINS

" HVS:LSM "

Thereupon, on July twenty-eighth, the plaintiff wrote Stebbins that he had sold the property to Ernst and Emma Hahn for $15,000 in cash and inclosed Emma Hahn's certified check for $100 as a deposit on such sale. The Hahns were tenants of such property and subsequently purchased the property for $18,500. The $100 check which plaintiff sent was promptly returned by Stebbins.

Plaintiff contends that by virtue of the correspondence hereinbefore quoted there was an implied contract on the part of the defendant to employ plaintiff as a broker to sell the property in question. It is entirely apparent from the correspondence that there never was any such employment, and that whatever plaintiff did with reference to procuring a customer for the premises was purely voluntary and without any employment or authority of Lang or of Stebbins, his lawyer. At the close of the evidence, Justice WALSH, to whom the issues were submitted, dismissed the complaint, orally stating as follows: " The court finds that there is not one scintilla of evidence upon which there can be by implication or by conclusion, any evidence which would indicate an employment of the plaintiff as a real estate broker for the sale of these premises. The motion to dismiss in granted with exception to counsel for the plaintiff with thirty and sixty days."

Under the evidence in this case and the decisions of this court, there never was any employment of the plaintiff as a broker to obtain a sale of the property in question. The plaintiff did not claim that there was any express contract of employment, and at the conclusion of plaintiff's testimony the plaintiff moved to amend his complaint on the theory of *implied contract*. Such motion was clearly the result of the evident deficiency in the plaintiff's proof and it then appearing that there was no evidence whatever of any express hiring of the plaintiff for the purpose of procuring a purchaser of the property. Barrett's only connection with the matter was that he was employed to appraise the property for the purpose of transfer tax proceedings. Unquestionably, under some circumstances, an implied contract may be spelled out, but there were no circumstances here justifying that to be done. Here the plaintiff was employed as an appraiser, and, after making the appraisal, claims to have procured a purchaser, without any knowledge or authority from either of the defendants. Having made the appraisal and signed the transfer tax affidavit, the plaintiff inquired about the possible sale price of the property. To this inquiry Stebbins replied in the same tenor. No mention of sale or purchaser was made until after this time. In his capacity as a real estate broker, the plaintiff was a mere volunteer — a " butter-in." As such he was not entitled to commissions. The decisions of this

court are uniform on the subject and clearly support the dismissal of the complaint by the court below. A leading case was that of *Benedict* v. *Pell* (70 App. Div. 40) wherein this court said (at p. 45): " It is hardly necessary to cite authorities to prove that there must be an employment to entitle a broker to commission for the sale of the property; but what was said by Judge WOODRUFF in *Pierce* v. *Thomas* (4 E. D. Smith, 354) so concisely states the legal principle involved that the decision of this case can be rested upon his opinion. He says: ' To entitle a broker to recover commissions for effecting a sale of real estate, it is indispensable that he should show that he was employed by the owner (or on his behalf) to make the sale. A ratification of his act, where original employment is wanting, may, in some circumstances, be equivalent to an original retainer, but only where there is a plain intent to ratify. An owner cannot be enticed into a liability for commissions against his will. A mere volunteer without authority is not entitled to commissions, merely because he has inquired the price which an owner asks for his property, and has then sent a person to him who consents to take it. A broker has no better claim to recover for voluntary service, rendered without employment, and not received and acted upon by the owner as rendered in his behalf, than any other volunteer. * * * It is not true that an owner may not declare his price to whom he will, without the hazard of paying commissions to those who volunteer, unasked, to send him a purchaser on his own terms.' "

The quoted language of Judge WOODRUFF in *Pierce* v. *Thomas* (4 E. D. Smith, 354) is extremely pertinent to the facts in the case at bar. In *Meltzer* v. *Flying Fame, Inc.* (224 App. Div. 41), this court quoted with approval the language in *Fowler* v. *Hoschke* (53 App. Div. 327) as follows: " It is well settled that if a broker, without a previous request, brings a customer to a vendor, and the latter, without further acceptance of the broker's services, takes the customer, the broker is not entitled to compensation. An owner is not obliged to refuse a possible customer because services which he has not requested have been obtruded upon him, nor can he be enticed into a liability for commissions without his knowledge. In order to entitle the broker to commissions there must be an actual employment or a ratification and acceptance of the broker's acts, but in such case the intention to ratify must be plain, and no ratification could be inferred where no claim was made by the broker, and the fact that he was acting as broker was not drawn to the attention of the seller at the time."

In *Brady* v. *American Machine & Foundry Co.* (86 App. Div. 267) the court said (at p. 268): " To justify a recovery in their

behalf it was essential for the plaintiffs to establish an employment by the defendant. This, I think, they have failed to do. The evidence goes no further than to show that the plaintiff Brady, at the instance of a person who he himself denominates his ' client,' called upon the manager of the defendant to ascertain whether his corporation was willing to lease the factory property in question, and that the defendant did finally lease such property to the Mayhew Dynan Silk Company, whose representatives were led to enter into the contract through the agency of Mr. Brady. At no time during the negotiations between the defendant's manager and Mr. Brady was anything said or done, so far as is disclosed by this record, which indicates that the manager had any idea of ever employing the plaintiffs to act in his behalf or that of his corporation. It seems to me that no ingenuity can fairly spell out of the proof in this case any contract of employment on behalf of the defendant. ' To entitle a broker to recover commissions for effecting a sale of real estate, it is indispensable that he should show that he was employed by the owner (or on his behalf) to make the sale.' (*Pierce* v. *Thomas*, 4 E. D. Smith, 354.) This doctrine is equally applicable to a case like this, where a broker seeks to recover commissions for effecting a lease of real estate. ' It is well settled that if a broker, without a previous request, brings a customer to a vendor, and the latter, without further acceptance of the broker's services, takes the customer, the broker is not entitled to compensation.' (*Fowler* v. *Hoschke*, 53 App. Div. 327.) "

These decisions leave no doubt in our minds that the court below was entirely correct in dismissing the complaint upon the ground that no contract of employment, either express or implied, had been established by plaintiff. Several authorities are cited by appellant, but none of them seem to affect the situation here presented. Apparently the appellant misconceives the principle of law in the present case. What the appellant claims is that he produced a purchaser for the property at a price, who was ready, willing and able to purchase the property at that price. The plaintiff entirely looses sight of the fact that to entitle him to any commission whatever, he must first prove that he was employed to sell the property under authority given him by the owner or his agent, or, if he was not originally employed, that he rendered certain services that were appropriated by the owner, and that there was an understanding between the parties that he was to receive a commission for his services. None of these elements are present in the case at bar. It is true, according to the plaintiff's testimony, he talked with Hahn, the tenant, in regard to

purchasing the property. Hahn, the tenant of the property, finally purchased the property for $18,500, or $3,500 more than the price concerning which the plaintiff inquired of Stebbins.

The judgment appealed from should be affirmed, with costs to defendants, respondents, against plaintiff, appellant.

FINCH, P. J., O'MALLEY and UNTERMYER, JJ., concur; MARTIN, J. dissents.

MARTIN, J. (dissenting). The plaintiff, a licensed real estate broker, in the early part of 1930 met Henry V. Stebbins, an attorney, at the office of Otto & Lyons, 60 Broad street, New York city, and was introduced to him as a real estate broker and trader. Mr. Stebbins stated that he represented the estate of Anna Lang and was interested in obtaining an appraisal of a piece of property at 2227 Metropolitan avenue, Middle Village, Queens county.

Thereafter, in the first part of June, 1930, the plaintiff visited the property for the first time and had a talk with Ernst Hahn, the tenant who occupied the premises. As a result of that conversation and on July 16, 1930, the plaintiff wrote a letter to Mr. Stebbins in which he asked if Mr. Stebbins would consider an offer of $15,000 for the property and if so would he kindly let the plaintiff know the terms. This letter was written upon a letterhead bearing the following caption:

" BERNARD B. BARRETT
Licensed Real Estate Broker
554 West 161st Street
New York."

In a letter dated July 25, 1930, which the plaintiff received from Mr. Stebbins, it stated in part *that his client would take* $15,000 in cash for the property.

Upon receipt of the letter the plaintiff again visited the premises and spoke to Mr. Hahn and then forwarded to Mr. Stebbins a letter dated July 28, 1930, notifying Mr. Stebbins that he had consummated the sale of the premises for $15,000, and that the tenant Hahn was the purchaser and inclosed a check for $100 as a deposit on account.

Mr. Joseph Quinn, an attorney, stated that on or about July 28, 1930, he was retained by Mr. Hahn to represent him in negotiations then pending for the purchase of the property. The testimony of Mr. Hahn, the tenant, called by the plaintiff as a witness, was that on or about July 28, 1930, he gave the plaintiff a certified check for $100 and simultaneously executed the plaintiff's Exhibit No. 5 which reads:

"*July* 28, 1930.

" I hereby offer $15000 cash for the property & house known as 7825 Metrop. Ave. on the corner of Furman Ave. in the County of Queens City & State of N. Y.

> " ERNST HAHN
> " EMMA HAHN."

Mr. Hahn testified that he thereafter purchased the property for $18,500 in cash.

Demand was made by the plaintiff for a commission at the prevailing rate in the particular vicinity, which was conceded to be $750, or five per cent of $15,000. This action was then brought upon the refusal of the defendants to pay the plaintiff any commission.

The court held that the proof adduced by the plaintiff was sufficient to show that the Hahns, the prospective purchasers, were ready, able and willing to purchase for $15,000, and actually bought the property for $18,500 in cash. The complaint, however, was dismissed by the court on the theory that plaintiff had failed to prove either an express or implied contract of employment.

The documentary evidence was sufficient to show that the plaintiff had authority to purchase the property and made an offer which the defendant Stebbins represented he had a right to accept. There may have been a question about the authority of Stebbins to offer the property for sale or to accept the offer made by the plaintiff, in which event the first cause of action must fail. If the defendant Stebbins offered the property without any authority to do so, he is personally liable for damages and the second cause of action should not have been dismissed. If a broker produces a buyer and his efforts are rendered futile through his employer's fault, any damages sustained by the broker may be recovered from the employer. The proper form of action under the circumstances here disclosed, where there is a doubt, is to sue both the agent and the principal. (Civ. Prac. Act, § 213; *Jamison* v. *Lamborn*, 207 App. Div. 375.)

In *Harriss* v. *Tams* (258 N. Y. 229) the court held that an agent impliedly warrants his authority to make the representations through which he induces another to make a contract with the principal. For the breach of that implied warranty the agent is liable to the injured party for all damages which flow naturally from reliance upon the agent's assertion of authority.

In *Moore* v. *Maddock* (251 N. Y. 420) the court held that if a person attempts to make a contract on behalf of a corporation, without authority, the loss occasioned by there being no contract

must be borne by him. A warranty of authority will, therefore, be implied and where the assertion of authority is intended and understood to be a continuing assertion the warranty of its truth must, from its nature, be a continuing warranty. At page 425 the court said: "An action for breach of warranty rests upon a contract which the law implies. The cause of action accrued when the wrong to the plaintiff was complete, not, as in an action for fraud, when the wrong was discovered. The cause of action is not upon the contract itself, made in the name of his principal, but upon the defendant's implied warranty or promise. (*New Georgia Nat. Bank* v. *Lippmann*, 249 N. Y. 307.) Breach of the implied promise or warranty of the defendant, rather than the repudiation or breach of the agreement which the defendant purported to make as agent of a corporate principal, should, on principle, fix the time when the plaintiff's cause of action against the defendant must be deemed to have accrued. We have found no judicial decision opposed to the principle.

" * * * If the defendant attempted to make a contract on behalf of the corporation without authority, then according to a long line of judicial decisions, it is but just that the loss occasioned by there being no contract with the principal, should be borne by the agent who acted without authority. As a device by which that loss may be placed upon the agent, the courts have held that a promise or warranty must be implied." (Cases cited.)

In *New Georgia Nat. Bank* v. *Lippmann* (249 N. Y. 307) the court held that under section 39 of the Negotiable Instruments Law a person who signs an instrument containing or to which he adds words indicating that he signed for or on behalf of a principal or in a representative capacity, is liable on the instrument if he has signed without authority.

As negativing the contention of the respondents that there was no employment of the plaintiff in the present case, we have the fact that Mr. Stebbins, the lawyer for the estate and the man with whom the plaintiff communicated, knew that the plaintiff was a real estate broker. Mr. Stebbins had hired the plaintiff to appraise the property in question and had written that payment would be made for those services. It follows, therefore, that when the plaintiff asked if an offer of $15,000 would be considered by Mr. Stebbins for the property, the plaintiff was offering his services, and it is reasonable to believe that he expected to be paid for them. In addition to this, we have the fact that some months after the prospective purchasers, Mr. and Mrs. Hahn, were introduced to Mr. Stebbins, an actual sale of the premises to them took place to them, at a higher price.

A contract of employment may be implied when the circumstances indicate that the broker reasonably expected to be compensated for his services and that the principal with full knowledge of the facts availed himself of the broker's labors. (*West* v. *Mills*, 83 App. Div. 629.) In the present case Mr. Stebbins knew that the plaintiff was a broker, and in accepting the offer made by the plaintiff, he availed himself of the broker's labors.

In *Knotts* v. *Lake Shore & Michigan Southern R. Co.* (172 Ill. App. 550, 555) the court said: "While it is true that a mere volunteer cannot recover compensation for services rendered without any contract of employment, or rendered in spite of the refusal or against the wish and desire of the owner [cases cited], yet, where it appears that the owner knows that the alleged volunteer is a broker, that he is endeavoring to effect a sale to a prospective buyer and expects to receive compensation for his services if successful, and where it also appears that with such knowledge on the part of the owner, the broker was encouraged by the owner to aid in the sale, and led by the owner to believe that he would receive compensation, a contract to pay compensation will be implied, if the sale is thereafter consummated through the efforts of such broker. * * * By such conduct, the owner impliedly approves the agency of the broker.

" In Story on Contracts, 5th Ed., Sec. 491, it is said: ' So also the silence of either party will import assent to the terms of the contract whenever it would have been incumbent on him to express his dissent if he did not agree thereto, or where his silence is explicable only by the presumption of his assent.' "

In *Sibbald* v. *Bethlehem Iron Co.* (83 N. Y. 378) the court said: " Nor do we see any fault in the charge of the court in this connection, that it was immaterial whether the broker was originally employed, or whether, after he had brought the thing about, the principal availed himself knowingly of the fruits of the action of the broker. This is only saying that the contract of employment may be established either by proof of an express and original agreement that the services should be rendered, or by facts showing, in the absence of such express agreement, a conscious appropriation of the labors of the broker. Indeed, the learned counsel for the defendant very fairly and justly concedes that the contract may be established in some cases ' by the mere acceptance of the labors of a broker.' "

In this case the plaintiff met the situation by pleading the contract and also anticipated that the defendants might assert that there was no authority in Mr. Stebbins to make the contract, and pleaded a cause of action against him personally. That cause

of action, the second, was properly pleaded, and on the proof the defendant Mr. Stebbins is liable to the plaintiff for his commissions. There is implied in Mr. Stebbins' letter the fact that the property was for sale and that he had authority to sell it for $15,000. When Mr. Stebbins repudiated that letter and contended that he had no authority, he became personally liable to the plaintiff.

The judgment dismissing the complaint in so far as it affects the second cause of action should be reversed, with costs, and judgment entered in favor of the plaintiff against the defendant Stebbins upon said cause of action, with costs; and in other respects the judgment should be affirmed, with costs to the defendants other than the defendant Stebbins against the plaintiff.

Judgment affirmed, with costs.