## GOWLAN v. MARKHAM et al.

District Court, S. D. New York.

May 21, 1946.

Nathaniel Choloney, of New York City, for plaintiff.

John F. X. McGohey, U. S. Atty., of New York City, (David McKibbin, Asst. U. S. Atty., of New York City, of counsel), for defendants.

MANDELBAUM, District Judge.

Plaintiff sues the United States of America and James E. Markham, as Alien Property Custodian of the United States, for brokerage commissions. The jurisdiction of the court over the defendant United States of America is based upon the Tucker Act, 28 U.S.C.A. § 41(20).

The gravamen of the amended complaint is that on August 11, 1943, and September 7, 1943, the Alien Property Custodian

(then Mr. Leo T. Crowley) through his real estate representative, Mr. Reid, who was also an accredited agent of the United States of America, hired and engaged the plaintiff as a real estate broker to secure a purchaser for the "Nippon Club"; that it was impliedly agreed to pay the plaintiff the customary brokerage commissions; that pursuant to such employment, plaintiff procured a purchaser; that the property was purchased and that the commissions amounted to $1100, which sum plaintiff demanded but was not paid.

The defendants resist this claim, urging that plaintiff was not employed by Mr. Reid on any of the dates in question or at any other time, and that assuming, arguendo, that there was such an employment, Mr. Reid on behalf of the Custodian had no authority to enter into any contract with the plaintiff for brokerage commissions.

In the leading case of Benedict v. Pell, 70 App.Div. 40, at page 45, 74 N.Y.S. 1085, at page 1089, the court said: "It is hardly necessary to cite authorities to prove that there must be an employment to entitle a broker to commissions for the sale of the property; * * * *". See also Barrett v. Lang, 243 App.Div. 35, 276 N.Y.S. 297, affirmed 269 N.Y. 511, 199 N.E. 512.

It is therefore incumbent upon the plaintiff to establish his employment as a broker by the required degree of proof before he can recover.

The first alleged contract date is August 11, 1943. The events transpiring on that date consequently become important. The Elks Lodge No. 1 was interested in purchasing a new club house. The plaintiff who was a licensed real estate broker and a member of that Lodge, first brought the "Nippon Club" to the attention of the Elks through a telephone conversation with a Mr. Swain, who was the Chairman of the House Committee, authorized to procure a new home for the Lodge. This conversation took place on the date in question. Following his talk with Mr. Swain, plaintiff testified that he went to the "Nippon Club" and there noticed a sign posted referring inquiries about the property to the Alien Property Custodian, at 120 Broadway, New York City, and thereupon went directly to the said office. That he presented his business card to Mr. Reid, the real estate representative of the Custodian, and requested certain information about the property. Mr. Reid gave him the information and after plaintiff inquired about the price, was informed by Reid that no price will be set by the Custodian, and that a bid would have to be submitted, which if satisfactory to the Custodian, would be accepted.

The plaintiff left and on that very day, addressed a letter to Mr. Swain of Elks Lodge No. 1 (plaintiff's Exhibit 2) in which he, among other things, stated that the property in question "can be bought for $50,000 or less where the proper contact can be made", and in the last paragraph stated "outside of my small brokerage fee", this building with its beautiful fixtures could be obtained for next to nothing. The exhibit itself indicates that a copy was forwarded to "Alien Property Custodian Mr. Leo T. Crowley or Mr. Guy Reid, 120 Broadway, New York".

Reid's testimony with respect to the claimed meeting on August 11, 1943, and the receipt of the letter is conflicting. He stated that he did not recall speaking to the plaintiff on that day or having received a copy of the letter addressed to Mr. Swain. However, on cross-examination Reid frankly submitted in effect, that plaintiff's version might be correct.

Be that as it may, and giving plaintiff's statements a complexion most favorable to him, it is clear to me that Reid did not engage plaintiff as a broker on that day. He merely gave him particulars concerning the property in question and told him to submit an offer. What Reid told the plaintiff he could quite conceivably have told to a dozen other brokers who were desirous of information to be transmitted to prospective purchasers without resulting in any contractual relationship.

Plaintiff's letter sent primarily to Swain does not enhance his position one bit. He cannot create a contract by his own letter and Reid was under no legal obligation to respond to this letter or to refuse to deal with the prospective purchaser and incurred no liability in so doing. Fowler v. Hoschke, 53 App.Div. 327, 65

N.Y.S. 638; Denton v. Abrams, 120 App. Div. 593, 105 N.Y.S. 2; Morton v. Barney, 140 Ill.App. 333, 340.

It must be borne in mind that from plaintiff's own testimony, no mention was made to Reid about broker's commissions nor did the plaintiff make any request for the execution of a brokerage agreement.

The next decisive date is September 7, 1943, and we must examine the events of that day for guidance. It appears from plaintiff's testimony that on that day, Mr. Swain telephoned him and requested additional information regarding the "Nippon Club". In response to this request, plaintiff proceeded to the "Nippon Club", was shown through the premises by a representative of the Custodian, and obtained an inventory of personal property and a form offer to purchase. Following that, plaintiff again called on Mr. Reid and after presenting his business card, stated that he had an interested party and requested information as to the price of the "Nippon Club". Reid replied that he could give him no information with regard to the price, and for his party to submit a bid. And here again, no mention was made by the plaintiff of brokerage commissions, nor was request made for the execution of a brokerage contract.

On the same day, plaintiff addressed a letter to Mr. Swain (Plaintiff's Exhibit 4) enclosing the inventory of personal property and the form offer to purchase. He advised that it should be filled out by Swain or one of the officers, so as to make it binding and not to forget to mention plaintiff's name as broker, and that he was in touch with Mr. Reid that day. A copy of this letter was forwarded to "Mr. Leo T. Crowley, or Mr. Guy Reid, Alien Property Custodian of the United States of America, 120 Broadway, N. Y."

Although Reid expressed a doubt as to the second meeting with the plaintiff, which he says might have taken place, there is no dispute as to his receipt of the letter dated September 7, 1943. Neither does this letter nor the one of August 11, 1943 contain any suggestion that Reid had ever employed him in any capacity whatsoever.

The claimed meeting of September 7, 1943, between plaintiff and Reid and the letter of even date addressed to Swain, did not give rise to any hiring of the plaintiff by Reid. It will suffice to say that my reasons for this impression are the same as those I have previously set forth in holding that no contract was entered into on August 11, 1943.

I might add that it is both interesting and significant that plaintiff requested Swain to mention his name as broker, when considered in the light of two advertisements inserted on behalf of the Custodian in the New York Times and the Herald-Tribune on August 31, 1943 and September 2, 1943 respectively. It will be noted that these notices were inserted after August 11 and prior to September 7, 1943.

These notices constituted an invitation to the public to submit sealed bids for the purchase of the "Nippon Club" not later than the 17th day of September, 1943, at which time they would publicly be opened and declared. It also contained the following provision, "Bids involving the payment of a brokerage commission must state the gross bid, the amount of the commission and the net amount to be received by the seller. The net amount of said bid will be considered in determining the successful bidder".

I am persuaded that these newspaper insertions negative any claim that a contract was entered into either on August 11th, or September 7th. If I recall correctly, plaintiff acknowledged that he knew the contents of at least one of these advertisements when he requested Swain in his letter of September 7th, to mention his name as broker so that the bid made by the Lodge would include his commissions.

None of the public bids were accepted by the Custodian because of the inadequacy of the prices, and thereafter an offer was executed by the Lodge on September 24, 1943. Plaintiff's name was omitted from the said offer of purchase. Whether this was done deliberately to obtain the property for a lesser price or purely as an oversight by the Lodge does not change

the picture in so far as the Custodian is concerned. Since no contract was entered into on either of the alleged contract dates, plaintiff would only be entitled to commissions for the sale of the "Nippon Club" if his name had been inserted in the offer of purchase and its subsequent acceptance in that form. Surely, under the circumstances, it was not Reid's obligation to see that plaintiff's name was inserted as broker. More so is this evident by virtue of the fact that the final purchase price of $40,000 was agreed upon (subject to the approval by the Custodian) as a net bid to the seller.

There is a variance in the testimony as to whether plaintiff's name was discussed as the broker in the transaction at the conference on September 24, 1943, or at the final closing on February 4, 1944. But the fact remains that plaintiff's name was omitted from the offer and Reid was under no legal obligation, as I see it, to cause his name to be inserted.

The subsequent correspondence between plaintiff and the Custodian shed no light on the subject except that a claim for commissions was made and the same refused by the Custodian. This obviously created no rights or obligations where none had been created on September 24, 1943 or prior thereto. Under the circumstances, the Custodian certainly was not precluded from accepting the Lodge's offer even with knowledge that the plaintiff had a claim for commissions. From all the evidence adduced, I am inclined to the view that the plaintiff was attempting to buy the "Nippon Club" for the Elks rather than sell it for the Custodian.

The facts in Haynes v. Fraser, 76 App. Div. 627, 78 N.Y.S. 794, 795, bear a likeness to those at bar. I quote from the opinion: "* * * In all the correspondence there is no hint or suggestion that the plaintiff is working in the defendant's interests, or in his employment. On the contrary, the fact is prominently presented that he is endeavoring to buy the property as cheaply as he can, and is not endeavoring to sell it at the best price which can be obtained * * *." See also Meltzer v. Flying Fame, Inc., 224 App.Div. 41, 229 N.Y.S. 547.

In view of my conclusion that the plaintiff has failed to establish any contract of employment, the question of Reid's authority to bind the Custodian is obviated.

A motion to dismiss the complaint as to the defendant James E. Markham, as Alien Property Custodian of the United States, upon which decision was reserved was made at the trial. The court now concludes that the motion is well founded, and the complaint is accordingly dismissed as against Markham, for lack of jurisdiction.

Judgment is rendered in favor of the United States of America.

The following are the court's findings of fact and conclusions of law:

### Findings of Fact

1. That the plaintiff is a United States citizen and a resident of the County and State of New York, and at the times mentioned below was and still is a duly licensed real estate broker of the State of New York.

2. That at the times hereinafter mentioned Leo T. Crowley was the duly appointed, acting and qualified Alien Property Custodian of the United States; that on March 23, 1944, the defendant James E. Markham became the duly appointed, acting and qualified Alien Property Custodian of the United States, and is now serving as such.

3. That plaintiff first brought the "Nippon Club" to the attention of Elks Lodge No. 1, and pursuant to the request of Mr. Swain, Chairman of the House Committee, authorized to procure a new home for the Lodge of which plaintiff was a member.

4. Plaintiff's conversations of August 11, and September 7, 1943, with Mr. Reid, the real estate representative for the Alien Property Custodian in New York, at 120 Broadway, New York City, and the letters of even date (Plaintiff's Exhibits 2 and 4) addressed primarily to Mr. Swain, copies of which were forwarded to Mr. Reid, even assuming plaintiff's version to be correct, did not give rise to any contract for brokerage commissions between plaintiff and the Custodian.

538

5. That on August 31, 1943 and September 2, 1943, notices of public sale of the "Nippon Club" (Defendants' Exhibit A) were inserted by the Custodian in the New York Times and Herald-Tribune respectively.

6. That within two or three days thereafter plaintiff had knowledge of at least one of such notices and was familiar with the terms thereof, including the provision stating "Bids involving the payment of a brokerage commission must state the gross bid, the amount of the commission, and the net amount to be received by the seller. The net amount of said bid will be considered in determining the successful bidder".

7. That public bids for the "Nippon Club" were rejected by the Custodian on September 17, 1943 because of the inadequacy of the prices offered.

8. That an offer of purchase was executed September 24, 1943 on behalf of Elks Lodge No. 1 and Mr. Reid agreed to recommend acceptance of a bid of $40,000 provided it was a net bid to the seller.

9. That neither the name of the plaintiff or of any other broker was inserted in the said offer of purchase.

10. That title to the "Nippon Club" passed to Elks Lodge No. 1 on February 4, 1944.

### Conclusions of Law

1. That the court lacks jurisdiction over the defendant James E. Markham, as Alien Property Custodian of the United States.

2. That the jurisdiction of the court over the defendant United States of America is based upon the "Tucker Act", 28 U.S.C.A. § 41(20).

3. That no contract for brokerage commissions upon the sale of the "Nippon Club" was entered into between plaintiff and Mr. Reid on behalf of the Alien Property Custodian on or about August 11, 1943, or on or about September 7, 1943, or thereafter.

4. That the plaintiff has failed to prove a claim upon which relief can be granted.

5. The complaint as to the defendant James E. Markham, as Alien Property Custodian of the United States, should be dismissed on the ground of lack of jurisdiction.

6. Judgment should be entered in favor of the United States of America dismissing the complaint.