■ PHILIP WINOGRAD, INC., Respondent, v PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant. — Order, Supreme Court, New York County (Allen Murray Myers, J.), entered July 29, 1983, denying defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, and the motion is granted dismissing the complaint, together with costs. ¶ Plaintiff sues for the "customary and usual commission" (5%), amounting to $2.1 million, for services allegedly rendered as a real estate broker in connection with defendant's sale of 100 Church Street in Manhattan, to MacKenzie-Hill 100 Church Street Corporation (MacKenzie-Hill) for $42 million, in July, 1981. Plaintiff alleges that it had been employed by defendant as a broker in September, 1980 to procure a purchaser for defendant's premises and that the commission was earned by plaintiff by procuring a purchaser who was ready, willing and able to purchase the premises, and who did so. ¶ The facts upon which plaintiff relies are that it was furnished by defendant with a "set-up" respecting the premises, particularizing the space involved, the income (rent roll) and expenses, including real estate taxes, and that it furnished the listing

to Jones Lang Wootton (JLW), also a real estate broker and that JLW brought about the sale to MacKenzie-Hill. However, it is undisputed that JLW knew of the availability of the property for sale during 1979-1980. Moreover, it appears that during those years it was common knowledge that defendant (Prudential) was desirous of selling this property, as well as other property, and made known such desire by circulating set-ups among various brokers. ¶ Plaintiff's president, Philip Winograd, met with a representative of JLW sometime in September, 1980 and furnished such representative with a copy of defendant's set-up, as well as set-ups respecting other property. JLW's representative advised Winograd that it knew of the property, that Prudential was desirous of selling it, and that JLW had available to it all of the information furnished by Winograd which had its source with Prudential. Winograd had no further contact with either JLW or Prudential. ¶ It is undisputed that in early 1981 JLW procured MacKenzie-Hill as a prospective purchaser which purchased the property from Prudential on July 17, 1981 and that MacKenzie-Hill paid JLW a commission for such brokerage service. ¶ There is no evidence in the papers submitted that Prudential retained plaintiff as a broker or agreed to pay plaintiff a commission, nor is there any evidence that JLW did so. There is likewise no evidence that plaintiff was the procuring cause of the purchase by MacKenzie-Hill. ¶ The record is barren of any proof of any contact between the plaintiff and MacKenzie-Hill. Thus, plaintiff's claim is premised upon three facts: (1) Prudential furnished plaintiff, among others, with a set-up, which did not disclose the sale price nor contain any agreement to pay commission; (2) plaintiff furnished a copy of the set-up to JLW which apprised plaintiff that it already had the same information; (3) JLW brought about the sale between Prudential and MacKenzie-Hill. ¶ Upon these facts plaintiff is not entitled to a commission. A broker who receives a set-up of the type here involved does not become entitled to commission in the absence of proof he was retained as a broker or was the procuring cause of the ultimate sale (*Barrett v Lang*, 243 App Div 35, affd 269 NY 511). ¶ Nor is plaintiff aided by the alleged facts that when it was given the "set-up" in 1979 it was told by a representative of Prudential that the price it was seeking was $36 million, and that later in the fall of 1980 the asking price was increased to $42 million, the price at which the sale procured by JLW was consummated. Assuming the truth of these allegations, they provide no proof of a commission agreement, express or implied. Even on plaintiff's version of the facts, it received defendant's property set-up, which was also made available to others, and which was silent on the subject of commission. Plaintiff was never told that a commission would be paid to it. ¶ Plaintiff's sole connection with procurement of the purchaser was the fact that plaintiff furnished JLW with a copy of Prudential's set-up, which JLW already had in its possession. ¶ In the absence of a specific agreement, no fee or commission could be owing to the plaintiff for plaintiff's services without bringing the parties to the transaction together on the terms of the purchase (*Greene v Hellman,* 51 NY2d 197, 205). Whether plaintiff's alleged introduction of the property to JLW, a fellow broker, created an obligation of JLW to plaintiff need not be considered. JLW is not a defendant. So far as appears, plaintiff asserts no claim against it. ¶ A broker who does not enjoy the benefit of a special agreement to the contrary does not automatically and without more establish a right to commission simply because he initially called the property to the attention of the ultimate purchaser. "If that were enough, given the enterprise which our competitive society prizes in its brokers and its salesmen, a veritable morass of claims to proprietary rights in their prospects would result." (*Greene v Hellman,* 51 NY2d, at p 206.) ¶ Absent a direct and proximate link, as distinguished from one that is indirect and remote, between the introduction and consummation, there is no basis for

finding entitlement to a real estate broker's commission. Here, even on the version of the evidence most favorable to the plaintiff, there is insufficient to show that plaintiff was retained by the defendant as broker or that it procured the purchaser. ¶ There are no triable issues of fact. ¶ Accordingly, defendant is entitled to summary judgment dismissing the complaint. Concur — Asch, J. P., Bloom, Fein and Alexander, JJ.